### PEOPLE v. FRED W. THOMAS.

### PEOPLE v. PASQUINZO.

1. CONSPIRACY—CRIMINAL LAW—NATURE OF OFFENSE.

A conspiracy is a common-law offense punishable as provided by statute (CLS 1961, § 750.505).

2. SAME—CRIMINAL LAW—DEFINITION.

A criminal conspiracy is a mutual understanding or agreement between 2 or more persons, expressed or implied, to do or accomplish some criminal or unlawful act or purpose, or to accomplish some lawful act or purpose, not in itself criminal, but by criminal or unlawful means (CLS 1961, § 750.505).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur 2d, Conspiracy §§ 1, 2.
[3] 16 Am Jur 2d, Conspiracy § 7.
[4] 16 Am Jur 2d, Conspiracy § 10.
[5, 6] 1 Am Jur 2d, Abortion § 25; 16 Am Jur 2d, Conspiracy §§ 7, 10, 34–36.
[7, 10] 53 Am Jur, Trial §§ 511, 538.
[8] 53 Am Jur, Trial § 842.
[9] 5 Am Jur 2d, Appeal and Error § 948.
[11] 5 Am Jur 2d, Appeal and Error §§ 545, 867.
[12] 16 Am Jur 2d, Conspiracy §§ 7–11.
[13] 5 Am Jur 2d, Appeal and Error §§ 545, 553, 555, 673.
[14] 53 Am Jur, Trial § 527; 16 Am Jur 2d, Conspiracy § 34.
[15, 16, 20, 21] 53 Am Jur, Trial § 527.
[17, 18] 53 Am Jur, Trial §§ 524, 525, 627.
[19] 53 Am Jur, Trial § 627.
[22] 53 Am Jur, Trial §§ 524, 525.
[23, 24] 5 Am Jur 2d, Appeal and Error §§ 786, 838.
[25] 53 Am Jur, Trial § 534.
[26] 4 Am Jur 2d, Appeal and Error §§ 397, 398,

3. SAME—CRIMINAL LAW—EVIDENCE.

> Proof of a formal agreement is unnecessary to support a finding of guilt to a charge of criminal conspiracy, it being sufficient if the circumstances, acts, and conduct of the parties are such as to show an agreement in fact, and such agreement may be established by evidence that the parties steadily pursue the same object, whether acting separately or together, by common or different means, but ever leading to the same unlawful result (CLS 1961, § 750.505).

4. SAME—CRIMINAL LAW—EVIDENCE.

> Criminal conspiracy does not require a showing that the defendant knew the full scope of the conspiracy or participated in carrying out each detail, nor need he be acquainted with each of his alleged coconspirators or know the exact part played by each of them, since any other view would make conspiracy prosecutions impossible (CLS 1961, § 750.505).

5. SAME—CRIMINAL LAW—ABORTION—EVIDENCE.

> Claim by defendants, convicted of conspiracy to commit abortion, that such convictions must be reversed because there was not positive testimony of such conspiracy, and such conspiracy was denied by 3 coconspirators whose testimony was binding on the people because voluntarily called as witnesses on the people's behalf *held*, without merit, where, although each of the 3 denied knowing all the other conspirators and denied any agreement between themselves and defendants to commit or procure abortions, each also acknowledged knowing one or more of the defendants and admitted acts and conduct with at least one of the defendants which led to and permitted the carrying out of the common illegal purpose, since such admissions contradicted their denials of an agreement and constituted sufficient evidence to support the verdict of the jury (CLS 1961, § 750.505; CL 1948, § 750.14).

6. SAME—CRIMINAL LAW—EVIDENCE.

> Denial by one or more coconspirators of any agreement, which is the gravamen of the offense of conspiracy and the ultimate question for the jury to decide, does not require that a verdict be directed in favor of all defendants (CLS 1961, § 750.505).

7. TRIAL—INSTRUCTIONS—REQUESTED INSTRUCTIONS.

> It is improper for the trial court to submit requested instructions as having emanated other than from the court.

8. SAME—INSTRUCTIONS.

    The entire context of the court's charge must be considered in determining whether there has been reversible error in the court's instructions to the jury.

9. APPEAL AND ERROR—SUBSTANTIAL RIGHTS—MISCARRIAGE OF JUSTICE.

    An appellate court has no right to reverse a criminal conviction or grant a new trial unless satisfied that there was such error committed as deprived the defendant of substantial rights or resulted in a miscarriage of justice (CL 1948, § 769.26).

10. CRIMINAL LAW — CONSPIRACY — TRIAL — INSTRUCTIONS — MISCARRIAGE OF JUSTICE.

    Trial court's statement to jury that specific portions of his instructions were being given pursuant to requests to charge *held,* harmless error, where the source of the requested instructions was not disclosed to the jury and a complete review of the instructions indicates that said error could not result in a miscarriage of justice (CL 1948, § 769.26).

11. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CRIMINAL LAW.

    Appellate courts will not review claims of error not presented to or passed upon by the trial court in a criminal case unless the claimed error deprived the defendant of substantial rights or resulted in a miscarriage of justice (CL 1948, § 769.26).

12. CONSPIRACY—CRIMINAL LAW—COMBINATION AND AGREEMENT.

    The gist of a charge of criminal conspiracy is an unlawful combination and agreement, with an intent to commit illegal act constituting the offense, and in this respect it differs from the general rule of criminal law (CLS 1961, § 750.505).

13. SAME—CRIMINAL LAW—TRIAL—INSTRUCTIONS.

    Claim by defendants, convicted of conspiracy to commit abortion, that the trial court committed reversible error in its instructions to the jury with respect to the motive or intent of the alleged conspirators *held,* without merit, where no objection was made to said instructions at trial, the matter was not presented to the trial court on defendants' motion for new trial, and a review of the entire charge indicates that defendants were not prejudiced thereby (CLS 1961, § 750.505; CL 1948, §§ 750.14, 769.26).

14. SAME—REQUEST TO CHARGE—INSTRUCTIONS—PRIMA FACIE.

    Claim by defendants, convicted of conspiracy to commit abortion, that the trial court committed reversible error by failing to give defendants' requested instructions defining *prima fac*.

*held*, without merit, where the trial court did instruct the jury that a "determination as to whether or not the prosecution has proven a conspiracy should be determined solely by you, without reference to any finding by the court as to the existence of a *prima facie* conspiracy," since such instruction properly stated the law and was all that was necessary (CL 1948, § 750.14; CLS 1961, § 750.505).

15. SAME — CRIMINAL LAW — REQUEST TO CHARGE — INSTRUCTIONS — CIRCUMSTANTIAL EVIDENCE — ABORTION.

Conviction of conspiracy to commit abortion, by reason of claimed error of trial court in failing to give defendants' requested instructions with respect to circumstantial evidence and the proofs necessary to convict *held*, not to have been error, where examination of the charge, as given, indicates that, although the instructions were not given in the language requested, they were given in substance by requiring the jury to find each element of the offense beyond a reasonable doubt (CL 1948, § 750.14; CLS 1961, § 750.505).

16. SAME — ABORTION — REQUESTED INSTRUCTIONS — COCONSPIRATORS NOT DEFENDANTS.

Claim by defendants, convicted of conspiracy to commit abortion, that the trial court committed reversible error in failing to give defendants' instructions dealing with the effect of the testimony of 3 coconspirators, not charged as defendants, who were called as witnesses on behalf of the people *held*, without merit, where the trial court properly instructed the jury that the people were not required to call such witnesses and that their testimony, if uncontradicted by other testimony, must be accepted as true (CL 1948, § 750.14; CLS 1961, § 750.505).

17. SAME—ABORTION—REQUESTED INSTRUCTIONS—THEORY OF CASE.

Claim by defendants, convicted of conspiracy to commit abortion, that the trial court committed reversible error in failing to give certain requested instructions dealing with the effect of the testimony of 3 coconspirators, not named as defendants, who were voluntarily called as witnesses on behalf of the people, on the basis that said requests contained defendants' theory of the case *held*, without merit, where a careful reading of the requested instructions indicates that they were not a proper request with respect to defendants' theory of the case (CL 1948, § 750.14; CLS 1961, § 750.505).

18. SAME—ABORTION—REQUEST TO CHARGE—THEORY OF CASE.

Claim of defendant, convicted of conspiracy to commit abortion, that the trial court committed prejudicial error in failing to

give a requested instruction, on the grounds that said instruction embodies said defendant's theory of the case *held*, without merit, where said instruction amounted to a mere denial of guilt predicated on defendant's own testimony, since such denial does not amount to a theory of the case (CL 1948, § 750-.14; CLS 1961, § 750.505).

19. TRIAL—THEORY OF CASE.

A theory is an analysis of a set of facts in relation to one another, and a mere denial of guilt does not measure up to a theory.

20. CONSPIRACY—ABORTION—REQUEST TO CHARGE—INSTRUCTIONS—WEIGHT OF EVIDENCE.

Claim by defendant, convicted of conspiracy to commit abortion, that the trial court committed prejudicial error in failing to give his requested instruction with respect to the weight to be given his testimony *held*, without merit, where although said requested instruction was not given verbatim, the court properly charged the jury with respect thereto (CLS 1961, § 750-.505; CL 1948, § 750.14).

21. SAME—ABORTION—REQUEST TO CHARGE—INSTRUCTIONS—CIRCUMSTANTIAL EVIDENCE.

Claim by defendants, convicted of conspiracy to commit abortion, that the trial court committed prejudicial error by failing to give their requested instructions dealing with proving the crime of conspiracy by circumstantial evidence *held*, without merit, where a reading of the entire charge reveals that the trial judge adequately and properly instructed the jury in such regard (CLS 1961, § 750.505; CL 1948, § 750.14).

22. SAME — ABORTION — EVIDENCE — COCONSPIRATORS — REQUEST TO CHARGE.

Claim by defendants, convicted of conspiracy to commit abortion, that the trial court committed reversible error in failing to give defendants' instruction that "if the inferences of conspiracy are contradicted by positive testimony of the coconspirators *indorsed as witnesses*, but not *defendants*, you may not find that a conspiracy existed and you must acquit" *held*, without merit, since said request did not properly state the law and was improper because the denials of a conspiracy agreement by the coconspirators were refuted by their own acts and other evidence in the case (CLS 1961, § 750.505; CL 1948, § 750.14).

23. Criminal Law—Appeal and Error—Sufficiency of Evidence.

The correct standard in passing upon a criminal appeal is whether there is evidence sufficient to convince of guilt beyond a reasonable doubt, and not whether the verdict is against the great weight of the evidence.

24. Conspiracy—Abortion—Sufficiency of Evidence.

Claim by defendants that there was insufficient evidence to justify their conviction of conspiracy to commit abortion *held*, without merit, where a review of the entire record indicates sufficient evidence present, if believed by the jury, to justify a finding of guilt beyond a reasonable doubt (CLS 1961, § 750-.505; CL 1948, § 750.14).

25. Same—Abortion—Court Rules—Request to Charge—Record— Miscarriage of Justice.

Claim by defendants, convicted of conspiracy to commit criminal abortion, that the trial court committed reversible error by failing to inform counsel of his decision as to giving or rejecting requested instruction before final argument to the jury, as required by court rule *held*, without merit, where the record fails to indicate what occurred in this regard, and a review of the entire record fails to affirmatively establish that the error complained of, if true, resulted in a miscarriage of justice (CLS 1961, § 750.505; CL 1948, §§ 750.14, 769.26; GCR 1963, 516.1).

26. Appeal and Error—Record on Review.

The Court of Appeals is unable to determine an issue on review, where no record is submitted with respect thereto.

Appeal from Recorder's Court of Detroit, Schemanske (Frank G.), J. Submitted Division 1 October 3, 1966, at Detroit. (Docket Nos. 13, 221.) Decided August 10, 1967. Rehearing denied September 20, 1967. Leave to appeal denied defendant Thomas November 24, 1967. See 379 Mich 789.

Fred W. Thomas and Alexander A. Pasquinzo were convicted of conspiracy to commit abortion. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Samuel H. Olsen*, Prosecuting Attorney, *Samuel J. Torina*, Chief

Appellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*William Murray,* for defendant Thomas.

*McNally & McNally,* for defendant Pasquinzo.

Holbrook, J.  Four defendants were charged with conspiracy[1] to commit abortion.[2]  They were tried in a joint trial in the recorder's court in the city of Detroit.  One defendant, Gilbert R. Frank, waived jury trial and was tried by the court.  The two defendants, Fred W. Thomas and Alexander A. Pasquinzo, were tried before a jury and convicted; and defendant Frank was found guilty by the trial judge.  The other defendant's case was dismissed by the court.  The defendants were sentenced on May 22, 1963.  Separate motions were made for a new trial on behalf of each of the defendants.  The court, after a hearing, denied the same in an opinion dated August 27, 1963.  Defendants Thomas and Pasquinzo appeal and raise several questions for review.

There was no direct testimony introduced indicating that all of the conspirators and coconspirators met together agreeing to conspire for the purpose of committing the crime charged.  The people based their case upon the evidence of certain facts, together with legitimate inferences to be drawn therefrom, and with circumstances surrounding the various acts by the charged participants to show a common purpose to effect the claimed conspiracy.

It was the theory of the people on the trial that all of the defendants used a code name, that of "Zack", in identifying women desiring abortions.

---

1 CLS 1961, § 750.505 (Stat Ann 1954 Rev § 28.773).
2 CL 1948, § 750.14 (Stat Ann 1954 Rev § 28,204).

The pertinent facts appear to be as follows: the people called as witnesses two policewomen who had assisted the police investigation by posing as pregnant women.

Coconspirator Maxine Luft, the owner and operator of a restaurant, was contacted in the early part of November, 1961, by policewoman Arko who said she desired to be relieved of a pregnancy. Initially Luft tried to contact an abortionist for her and said it would cost $300. Miss Arko was then told to see defendant Pasquinzo, the owner of a drugstore for help. Upon Miss Arko's failure to obtain help from defendant Pasquinzo, policewoman Mahon took over Miss Arko's assignment. Policewoman Mahon then contacted Maxine Luft and asked her help to be relieved of her pregnancy and was told by Luft that drugs and medicine could be tried first, an abortion operation would cost $150. She would have to wait until after the first of the year for an abortionist. It was after being given this information that Miss Mahon was sent by Maxine Luft to defendant Pasquinzo. Defendant Pasquinzo, when Miss Mahon visited him at his drugstore questioned her concerning her pregnancy and her source of contact and acquaintanceship with Maxine Luft. He told her that things were "hot" and the abortionists he knew were in jail or out of town. He said he did not keep the necessary drugs in the store and he had recently had trouble with the police, and he couldn't do anything for her then. After several conversations at the store and over the telephone, he agreed to get some medicine for her. According to arrangements, the two met at a certain bar one evening. Upon leaving the bar the two went to Pasquinzo's car where he gave Miss Mahon 3 kinds of medicine together with directions for taking the same in exchange for $25. When she told him the medicine did not work,

Pasquinzo referred her to defendant Thomas for an abortion and told her not to use her own name but to use the name "Zack." He also told her exactly what to say when she would call Dr. Thomas by phone for an appointment and further that if the doctor's wife answered the phone not to say anything. Witness Mahon, after experiencing some difficulty, contacted Dr. Thomas. After several conversations with him, she saw him while he was making his calls one morning and at that time he referred her to defendant Frank to have the abortion performed. Defendant Thomas told her he had already called Frank about her and Frank would be expecting her call. She called defendant Frank by phone, identified herself as Joan Zack and said Dr. Thomas had referred her to him. He replied, "Yes" and asked her for her telephone number and address and when she would come out for an appointment, which he explained would be an examination. Witness Mahon went to Frank's house the same day but when asked to submit to an examination, refused, unless defendant Frank's wife or Dr. Thomas would do it. She also testified that she told defendant Frank that she thought Dr. Thomas was going to do the operation. Defendant Frank told her that Dr. Thomas couldn't do it because he didn't have the special material. This is the same reason Dr. Thomas had given her for sending her to defendant Frank. She had also been told by Dr. Thomas when asked if he would be at defendant Frank's place that he never went out there unless there were complications. While there, defendant Frank received a telephone call from defendant Thomas concerning her. She testified that what she heard of the telephone conversation was as follows:

"and Mr. Franks said, 'Are you talkable?' And then he said, 'Funny thing, she is right here now, Doc,'

Then he said, 'How are the references?' And there was a pause and he says, 'Well, I'll be darned.' And he said, 'Are you sure it's all right, Doc?' And he says, 'Funny thing, she wouldn't let me examine her. Well, I will give her a cup of coffee and see if I can calm her down.' And then he said, 'Do you want to talk to her?' He said, 'Okay, well, thanks for calling, Doc.'"

Defendant Frank insisted that without a physical examination there would be no operation. The policewoman refused, left, and did not return.

Mr. John Darnell, of the Detroit police department, testified that on the morning of January 30, 1962, he followed defendant Frank and others from Frank's residence to the Metropolitan Airport. After arriving, defendant Frank left the others who had accompanied him and went to a place where passengers were arriving and approached two young women. The witness observed defendant Frank back away upon speaking to the first. He then approached the second young woman and heard defendant Frank ask if she was Miss Zack and when she nodded in the affirmative, Frank took her by the arm and they eventually joined the other persons in the dining room.

Jerry B. Holden, a witness for the people, testified in part as follows:

"*Q.* Where were you employed in January of 1962?

"*A.* With American Airlines.

"*Q.* In what capacity?

"*A.* As a passenger service agent.

"*Q.* Now were you employed there on January the 30th, 1962?

"*A.* 1962?

"*Q.* Yes.

"*A.* Yes, sir.

"*Q.* And in your employment there did you have occasion to see anyone who might be in the courtroom today?

"*A.* I believe I did, yes, sir.

"*Q.* Would you point that person out?

"*A.* The gentleman seated over here with the red tie.

"*Mr. Wisok.* Let the record show that the witness has indicated the defendant Gilbert Frank.

"*Q.* And how was he brought to your attention?

"*A.* I was working a flight that had just come in from Chicago approximately around noon that day, and the passengers were coming right beside me through the gate, and I heard a gentleman ask a young lady if she were Mrs. Zack, and I turned around, and she said, 'No.' And she joined another gentleman and they went away; and another young lady came through, and he said 'Are you Mrs. Zack?' And she said, 'Yes.' And they joined and went on up into the terminal. And right after that a gentleman came up and identified himself as a policeman, and he said, 'What did he call her?' And I said, 'Mrs. Zack.' He said, 'All right, remember that.' "

The Mrs. "Zack" turned out to be Miss Aiken whose pregnancy was terminated by Frank.

Defendant Frank paid $50, equal to 20% of the fee, to James Stanley, a coconspirator, for his part in relation to the Miss Aiken abortion. Stanley testified that he became acquainted with defendant Frank through defendant Thomas.

A witness testified that when she was pregnant in October, 1960, she went to see Dr. Thomas and was referred to defendant Frank for the purpose of having an abortion performed.

A code name of "Zeferious" was used on one occasion when Dr. Thomas was contacted by phone for an appointment for an abortion performed for $150.

For fixed fees, the defendant Gilbert L. Frank
and defendant Dr. Fred W. Thomas, in concert
with others, did perform criminal abortions on
frequent occasions. At the time defendant Frank
was arrested at his home, 2 women were in an
abortive condition there and were removed to a
hospital.

The appellant Pasquinzo asserts that he did not
conspire with anyone to criminally abort women;
that in referring anyone for an abortion, he was
merely doing a friend a favor and that he was
wrongly convicted of conspiracy in this case. How-
ever, it was testified that he obtained medicine to
induce an abortion and furnished it to at least 3
persons referred to him by Maxine Luft. When
referring witness Mahon to Dr. Thomas for an
abortion, he told her to use the code name "Zack."
This name was also used by Miss Aiken who was
met by defendant Frank at the airport. Dr. Thomas
talked with a person concerning an abortion when
that person used the code name "Zeferious." He
understood the purpose of witness Mahon's tele-
phone call when she said her name was "Zack" and
later discussed the matter with her.

The questions raised by appellants will be dis-
cussed in proper order.

1. *When the people charge in a case a conspiracy
to commit an abortion and name as coconspirators
persons indorsed as witnesses, does their testimony
denying any agreement to conspire between the
alleged conspirators require the trial court to direct
a verdict of not guilty for all defendants?*

Appellants maintain that the denial of any con-
spiracy by the coconspirators, the people's wit-
nesses, is binding upon the people unless refuted
by other positive testimony.

They predicate this claim upon two asserted rules
of law: (1) The people are not required to call as

a witness a *particeps criminis*. *People* v. *McCul-lough* (1890), 81 Mich 25; *People* v. *Considine* (1895), 105 Mich 149; *People* v. *Resh* (1895), 107 Mich 251; *People* v. *Knoll* (1932), 258 Mich 89. (2) The rule enunciated in the case of *People* v. *Lee* (1943), 307 Mich 743 set forth on p 752:

"The rule against impeaching one's own wit-nesses does not mean that the party is bound to accept such testimony as correct. He may prove the truth of material facts by other testimony, even though the effect thereof is directly to contradict the testimony of his own witnesses."

Appellants assert that the denial of any agree-ment by the coconspirators is not refuted by any other positive testimony. The law concerning con-spiracy in our State has recently been summarized in the case of *People* v. *Newsome* (1966), 3 Mich App 541. Therein we said that conspiracy is a common-law offense and punishable as provided in CLS 1961, § 750.505 (Stat Ann 1954 Rev § 28.773). We defined a criminal conspiracy as being a mutual understanding or agreement between 2 or more persons, expressed or *implied,* to do or accomplish some criminal or unlawful act or purpose or to accomplish some lawful act or purpose not in itself criminal, but by criminal or unlawful means. We quoted therein with approval an article appearing in the 1962 Harvard Law Review (1948–1949), p 276, and repeat here the applicable portion having to do with proofs necessary to support a finding of guilt, appearing on p 553 of the *Newsome, supra,* opinion:

"Therefore, the courts have held that proof of a formal agreement is unnecessary to support a finding of guilt, and *that it is sufficient if the cir-cumstances, acts, and conduct of the parties are such as to show an agreement in fact.* Such an agree-

ment may be established by evidence that 'the
parties steadily pursue the same object, whether
acting separately or together by common or different
means, but ever leading to the same unlawful re-
sult.' The broad discretion vested in the jury by
charges phrased in these accepted terms is extended
by the rule that it is unnecessary to show that the
defendant knew the full scope of the conspiracy or
participated in carrying out each detail. Nor need
he be acquainted with each of his alleged cocon-
spirators or know the exact part played by each
of them. Any other view would make conspiracy
prosecutions impossible." (Emphasis supplied;
footnotes omitted.)

Now it is true in the case at hand that cocon-
spirators Luft, Koweck, and Stanley each denied
any agreement existed between the defendants and
themselves to commit or procure abortions. Each
also denied knowing all the other conspirators.
They did, however, acknowledge knowing one or
more of the defendants, which is all that is neces-
sary under the ruling in *People v. Newsome, supra.*
Each admitted acts and conduct in reference with
at least one of the defendants which led to and
permitted the carrying out of the common illegal
purpose, which contradicted their denial of an
agreement.

A review of the testimony discloses sufficient
facts showing *acts and conduct* of the parties to-
gether with *circumstances* present to accord with
the evidentiary requirements set down in *Newsome,
supra,* for the jury to find the crime of conspiracy
to commit criminal abortions established and that
the 3 convicted defendants were a part of that con-
spiracy. This we find satisfies the permissive rule
allowing the people to prove material facts by other
testimony even though the effect is to directly con-

trovert the testimony of the people's own witnesses, as stated in *People* v. *Lee, supra.*

It would be an unusual result under these circumstances if the testimony of one or more of the co-conspirators denying the agreement, which is the gravamen of the offense and ultimate question for the jury to determine, would require a directed verdict in favor of all defendants. Appellants do not cite any case supporting such a rule, nor do we find that such a rule has been adopted in Michigan, and we do not adopt it.

2. *Did the trial court commit reversible error in advising the jury without identifying the source that portions of the law he was charging were being given in compliance with requests to charge?*

It is true that the judge in instructing the jury on the law stated: "Now members of the jury, I have been requested to charge you, and I do charge you—some of these may be repetitious, but I still will give them" and after giving such instructions on 2 occasions used the following words: "And the court is adding:", "The court adds to that:", and on another occasion he stated: "I also charge you, members of the jury, and I have been requested to charge you, although these again might be repetitious, but I will charge you".

It was improper for the court to submit the requested instructions as having emanated other than from the court. *Reetz* v. *Rigg* (1962), 367 Mich 35; *People* v. *Hunter* (1963), 370 Mich 262. To determine whether there has been reversible error, we consider the facts surrounding the error committed. When it involves court instructions, we consider the entire context of the charge. In this case the source of the requested instructions was not disclosed to the jury.

We have no right to reverse these convictions or grant a new trial unless we are satisfied that there

was such error committed as deprived the defendants of substantial rights or resulted in a miscarriage of justice. *People* v. *Pizzino* (1945), 313 Mich 97. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).

Upon a complete review of the instructions, we are convinced that the error complained of did not result in a miscarriage of justice. We conclude that reversible error was not committed.

3. *Did the court err in advising the jury that "Next, you must determine whether the testimony is sufficient as to any particular defendant in the light of his interest or lack of interest, purpose or lack of purpose, his motive or lack of motive, and all other material facts or circumstances disclosed by the believable evidence.*

*"And the court is adding: However, in your determination, I instruct that neither motive or intent is, as a matter of law, an element of the crime of conspiracy so long as a man joins the conspiracy, no matter what his motive is, he becomes a conspirator; although, of course, motive, intent and purpose on the part of each accused person, as you gather from the testimony, may be material as to circumstances to be considered by you."*

The appellants failed to object to this instruction before the jury retired to consider the verdict. Both appellants filed motions for a new trial and failed to assert therein such claimed error.

Unless the claimed error deprived the defendant of substantial rights or results in a miscarriage of justice, appellate courts will not review such claimed error where it has not been passed upon by the trial court. *People* v. *Limon* (1966), 4 Mich App 440; CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).

Although we find some ambiguity in the portion of the charge here challenged, we do not find therein reversible error. We read this portion of the in-

struction to mean that intent to join the conspiracy is immaterial when in fact the person charged has joined the conspiracy to do an illegal act. Admittedly, this portion of the charge was poorly stated. However, it was not prejudicial to the defendant.

Gillespie, Criminal Law and Procedure, § 1224, p 1616, states:

"The gist of conspiracy is the unlawful combination and agreement. A combination and agreement, with intent to commit an illegal act, constitutes the offense, and in this respect it differs from the general rule of criminal law." (Footnote omitted.)

In other parts of the instruction given by the trial judge, we find:

"A criminal abortion within the meaning of the statute would have three elements; the wilful use or administering of drugs, medicine or other substance, or the unlawful use of instruments, or other devices; second, on a pregnant woman; third, with intent to procure a miscarriage when not necessary to save the woman's life. And a conspiracy to commit abortion for profit would be an agreement of some sort between two or more persons, not necessarily all together; with intent to do or help towards the bringing of the miscarriage by the methods I have described."

We believe, after careful review of the entire charge by the court to the jury, that there was not prejudicial and reversible error. An appellate court considers the entire charge in reviewing claimed errors in the instructions. *People* v. *Carr* (1966), 2 Mich App 222; *People* v. *Smith* (1966), 3 Mich App 614; *People* v. *McIntosh* (1967), 6 Mich App 63.

4. *Appellants claim as error failure of the court
to give requested instructions 21, 22; 47, 48; 57, 58,
59, 60, 61, 62; 71a, 71b; 77; 78; and 79.*

Proffered instructions 21 and 22 have to do with
defining *prima facie*. The court properly charged
the jury that: "Your determination as to whether
or not the prosecution has proven a conspiracy
should be determined solely by you, without refer-
ence to any finding by the court as to the existence
of a *prima facie* conspiracy." This was all that
was necessary.

Requested instructions numbered 47 and 48 have
to do with circumstantial evidence and the proofs
necessary to convict. They contain a restatement
of an approved instruction set out in *People* v.
*Dellabonda* (1933), 265 Mich 486. The court did
instruct the jury:

"In determining the question of guilt or innocence
the jury are bound to exclude entirely from their
consideration every material fact and circumstance
alleged or sought to be true by the prosecution,
which is not proven to a moral certainty, or beyond
all reasonable doubt."

Also,

"The court has said the State is required to prove
each and every element of the offense beyond a
reasonable doubt in order to sustain a conviction.
It is therefore proper for the court to tell you in
law what is meant by the term 'reasonable doubt.'
* * * It is such a doubt that after hearing all
of the competent testimony in the case, you cannot
say that you have an abiding conviction to a moral
certainty of the defendant's guilt."

The court also charged:

"Circumstantial evidence is sufficient and is often
more persuasive to convince the mind of the exist-

ence of a fact than the positive evidence of a witness who may be mistaken; whereas, contemplation into fitness [assembling into a pattern?] of many circumstances made out by different witnesses can seldom be mistaken or fail to elicit the truth. But those circumstances should be strong in themselves, should each tend to throw a light upon and prove each other, and the result as a whole should be to leave no doubt upon the mind that the offense has been committed, and that the accused and no other could be the person who committed it."

The court also properly instructed the jury on presumption of innocence and the elements of the crime charged.

Although the instructions proffered were not given in the language requested, we find they were given in substance. No error resulted. *Fisher* v. *People* (1870), 20 Mich 135; *People* v. *Knoll* (1932), 258 Mich 89; *People* v. *Dunn* (1925), 233 Mich 185; *People* v. *Andrus* (1951), 331 Mich 535.

Appellants claim error in failure of the court to give requested instructions 57 through 62. These dealt with the effect of the testimony of coconspirators Luft, Koweck and Stanley. A proper instruction concerning the subject was given by the court as follows:

"In this case the people were not required by law to call as witnesses Maxine Luft, Diane Koweck and James Harvey Stanley. Insofar as their testimony is inconsistent with the people's theory of guilt, and it is uncontradicted by any other testimony, I instruct you that you must accept such fact as being true."

Appellants claim the proffered instructions contained their theory of the case and under *People* v. *Welke* (1955), 342 Mich 164, should have been given. We do not read them in this light. A careful read-

ing of these instructions fails to disclose a proper request of the court to relate to the jury defendants' theory of the case. No error was committed.

It is the claim of defendant Thomas that instruction 71a asserts defendant's theory of the case. We do not agree. A theory is an analysis of a set of facts in relation to one another. Webster's 7th New Collegiate Dictionary. A mere denial of guilt predicated on a defendant's own testimony does not measure up to a theory. In reviewing the record we find that defendant's assertion of innocence was clear both in the testimony and in the instructions.

Requested instruction 71b has to do with the weight to be given testimony of defendant Thomas. Although not given in the same verbiage, the judge did properly charge the jury in this regard as follows:

"Now the defendants have taken the stand in this case, and it is your duty to weigh, analyze and consider their testimony exactly the same as you do that of any other witness in the case, bearing in mind, of course, that they are the defendants in the case and may have a direct interest in the outcome of the case. However, you will seek to determine what the true facts are from their testimony, exactly the same as you do of other witnesses in the case. You will also apply the same tests to their testimony to determine the truth or falsity, and the weight and credibility you attach to their testimony. You have no right to disregard the testimony of the defendants merely because they are the defendants in the case; but on the contrary, if you find the testimony to be rational, natural and consistent, it may outweigh the testimony of all other witnesses and be sufficient for you to return a verdict of not guilty in their favor."

Defendants' requested instructions 77 and 78 have to do with the law concerning proving the

crime of conspiracy by circumstantial evidence. We have already ruled in dealing with requested instructions 47 and 48 that the trial judge adequately and properly instructed the jury in this regard.

Requested instruction 79 is as follows: "If the inferences of conspiracy are contradicted by positive testimony of the coconspirators indorsed as witnesses, but not defendants, you may not find that a conspiracy existed and you must acquit." This request was improper for two reasons. It was not correctly worded. It did not state the law. Moreover, we have determined that the denials of a conspiracy agreement by the coconspirators were properly refuted by their own acts and by other evidence in the case.

5. *Defendants assert as error refusal of the court to grant their motions for a new trial for reasons set forth in the motions.* These reasons will be discussed in their proper order:

(1) The verdict is against the great weight of the evidence. In *People* v. *Washington* (1966), 4 Mich App 453, p 456, this Court stated:

"The last assignment of error reiterates an incorrect standard of proof, asserting the verdict is against the great weight of evidence. The correct standard in a criminal appeal is evidence sufficient to convince beyond a reasonable doubt. *People* v. *Williams* (1962), 368 Mich 494."

A review of the record clearly indicates sufficient evidence present, if believed by the jury, to justify a finding of guilt beyond a reasonable doubt.

(2) The court failed to charge the jury as requested by defendants.

We have carefully and at length dealt with the matter of requested instructions and find no error present.

(3) The court failed to rule on the charges proposed by defendants covering defendants' theory before the defendants' final argument to the jury.

GCR 1963, 516.1 requires the trial judge to inform counsel of his decision as to giving and rejecting requested instructions, as claimed by defendants.

However, the record fails to disclose what happened in this regard. Defendants' counsel asserts that the court failed to inform counsel as to its proposed action on the requests. In the absence of a record we are unable to determine this issue on review.

In any event we are governed by CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096) which is as follows:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this State in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

We cannot say after a full examination of the entire cause it affirmatively appears that the error complained of, if true, resulted in a miscarriage of justice.

Affirmed.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.