PEOPLE v NASH

1. DRUGS AND NARCOTICS—CRIMINAL LAW—PRIOR CONVICTIONS—
   JUDGES—DISCRETION.

   There was a showing that the trial judge exercised his discretion
   in permitting a prosecutor to cross-examine a defendant in a
   trial for possession of narcotics where the record establishes
   that the judge allowed questioning regarding prior felony and
   misdemeanor convictions but did not allow the prosecutor to
   question the defendant about a previous narcotics conviction.

2. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—PRE-
   SERVING QUESTION.

   Failure to object at trial to the court's instructions to the jury
   precludes appellate review of the instructions unless a miscar-
   riage of justice results.

3. DRUGS AND NARCOTICS—HEROIN—USABLE AMOUNT—INSTRUCTIONS
   TO JURY—APPEAL AND ERROR.

   A trial court's failure to instruct the jury that to convict a
   defendant of possession of heroin it must find a clearly usable
   amount of heroin in the substance seized from the defendant
   was not reversible error where there was in fact a clearly
   usable amount.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENDANT'S INTEREST IN
   CASE.

   It is not improper in a criminal case wherein a defendant has
   taken the stand for the court to instruct the jury that when it

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 30 Am Jur 2d, Evidence § 1175.
   58 Am Jur, Witnesses §§ 748–750.
   Right to cross-examine accused as to previous prosecution for, or
   conviction of, crime, for purpose of affecting credibility. 161 ALR
   233.
[2] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
   75 Am Jur 2d, Trial §§ 906, 909.
[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 91.
   What constitutes "possession" of a narcotic drug proscribed by § 2
   of the Uniform Narcotic Drug Act. 91 ALR2d 810.
[4] 75 Am Jur 2d, Trial § 867 *et seq.*
[5] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 45–47.

is weighing the testimony of the defendant it remember that the defendant has an interest in the outcome of the case.

5. DRUGS AND NARCOTICS—CRIMINAL LAW—POSSESSION OF NARCOTICS —INTENT—INFERENCES.

The jury may infer intent from any fact which fairly proves its existence; thus, testimony of a police officer that he saw a defendant attempt to hide tinfoil packets, which later were found to contain heroin, in a zipper case found to contain narcotics paraphernalia, was evidence from which the jury could infer that the defendant knowingly possessed the heroin.

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted Division 1 February 10, 1975, at Detroit. (Docket No. 19410.) Decided June 10, 1975.

Leonard Nash was convicted of possession of heroin. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, for the people.

*George Stone,* for defendant on appeal.

Before: D. E. HOLBROOK, P. J., and DANHOF and N. J. KAUFMAN, JJ.

D. E. HOLBROOK, P. J. The information charged that defendant unlawfully, knowingly or intentionally did possess a controlled substance, a narcotic drug, to wit: .65 grams of powder containing heroin, contrary to MCLA 335.341(4)(a); MSA 18.1070(41)(4)(a).

The case was tried September 7 and 10, 1973, before a jury which found defendant guilty of the charge. Defendant on September 25, 1973, was sentenced to a term of 2 to 4 years in state prison, and defendant now appeals as of right.

The evidence discloses that on May 23, 1973, Johnnie Robinson, a police officer, armed with a search warrant, went to 3812 Merrick, in the City of Detroit, to search for narcotics and narcotics paraphernalia. He knocked on the door, yelled "police officers—we have a search warrant", and entered the premises. He went through the living room to the front of the kitchen where he observed defendant sitting at the kitchen table with a brown zipper case in front of him. He had some tinfoil packets in his hand, which through the officer's experience he recognized to be possible narcotics. Defendant was trying to stuff them into the brown case. The case in which defendant was purportedly attempting to hide the packets of heroin contained numerous articles of narcotics paraphernalia including 14 straws, 12 spoons, 1 strainer, tinfoil and gummed cigarette paper, also 15 playing cards. Upon retrieving the four tinfoil packets of suspected narcotics, defendant was advised that he was under arrest and apprised of his constitutional rights.

Richard Kasprzyk, a police chemist, testified that in one of the four packets which were delivered to him for analysis, he found lactose, a dilutant for heroin, and in the other three packets he found a total of .65 grams of substance containing some heroin. The conducted test (qualitative analysis) indicated that the powder was comprised of at least ten percent heroin. Since an ounce of heroin contains 28 grams, the total of heroin in physical weight was about 149th or 147th of one ounce.

Defendant testified that he did not live in the house on Merrick but his girlfriend, Martha Watson, did. He admitted that he was at the house at the time the police entered, but did not bring the

tinfoil packets into the house; he had never seen the packets until just prior to the court hearing. When the police came in, he was in the bedroom with his baby, who was six months old. When he heard the commotion, he ran out of the bedroom with the baby in his arms and gave the baby to Martha Watson, who was in the house, and he was searched by one of the officers.

Defendant's counsel, on direct examination, questioned defendant as to whether he had been convicted of any narcotics offense or felony. Defendant responded that he had never been convicted of a narcotics offense, and that although he had been convicted of armed robbery in 1965 he had never been convicted of any felony since that time. Because the prosecutor wished to delve into defendant's record on cross-examination to refute his claim, he asked to question defendant outside the jury's presence as to convictions contained in his record, noting that the admissibility of prior convictions is within the discretion of the trial court. Such a hearing was held. Notwithstanding defendant's counsel's objections, the court ruled that other than traffic offenses, other misdemeanors and felonies were admissible if they were violations of state law. Pursuant to the ruling, the people cross-examined defendant in the presence of the jury with respect to the following prior convictions: disturbing the peace, April 16, 1964; assault with intent to commit robbery armed, July 21, 1964; assault and battery, November 24, 1965; attempted robbery armed, April 22, 1966; larceny in a building, April 22, 1966; and disorderly person, January 24, 1970.

We proceed to discuss and determine the issues raised on appeal by defendant.

## I

*Whether the trial judge exercised his discretion*

*in permitting the prosecutor to cross-examine defendant as to prior convictions?*

Defendant asserts that the trial court failed to exercise his discretion in determining whether the prejudicial effect of the prior convictions outweighed their worth in ascertaining the truth. Defendant cites *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974).

The record establishes that after a hearing on the question of admissibility of such convictions the trial judge exercised his discretion in fact. The trial judge exercised his discretion in not allowing the prosecutor to question defendant about a prior conviction on January 4, 1971, of unlawful use and addiction to narcotics. The conviction permitted to be introduced rebutted defendant's contentions on direct examination. Defendant "opened the door" and invited the inquiry.

The ruling in the case of *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), concerning the impropriety of admitting misdemeanor convictions to test credibility of a defendant is not applicable to this case because of the substantial differences in the facts present herein. Also, we have ruled that *People v Renno, supra,* is not to be applied retroactively. The instant case was tried in September of 1973, and *People v Renno* was decided June 25, 1974. *People v Phelps,* 57 Mich App 300; 225 NW2d 738 (1975).

There is no error concerning defendant's first issue raised herein.

## II

*Whether the trial court erred in failing to instruct the jury that to convict defendant for possession of heroin, it must find a clearly usable*

*amount of heroin contained in the .65 grams of substance taken from the three tinfoil packets?*

Defendant *now* asserts that the court's instructions were improper. No objection to the instructions was made by the defendant's counsel at the trial as required by GCR 1963, 516.2. In fact, the following occurred after the charge was given and in the absence of the jury:

"*Q. (by the court):* Are there any additions or changes to the charge, counsel?"

"*A. (by defense counsel):* Defendant is satisfied, your honor."

The people assert, and properly so, that absent a "miscarriage of justice" defendant's failure to object to the instructions at trial precludes appellate review. *People v Timmons,* 34 Mich App 643, 645; 192 NW2d 75, 76 (1971).

To determine the issue we must consider whether .65 grams of a substance of which at least ten percent is heroin, is a clearly usable amount. In *People v Stewart,* 52 Mich App 477, 486–487; 217 NW2d 894, 899 (1974), this Court stated:

"Three grains of heroin equal about 194 milligrams.[8] Yet, according to Israel and DeNardis, "The Irrationality of a Law Enforcement Approach to Opiate Narcotics", 50 Journal of Urban Law, 631, 645 (1973):

" 'The majority of heroin smuggled into the United States is eighty to a hundred percent pure. It is then diluted or "cut" by a series of wholesalers, jobbers, and retailers, the dealers and "pushers". The smuggled heroin may be cut with lactose or dextrose (milk sugars), quinine, mannite, mannitol or almost any white powdery substance, a fact which contributes to the prevalence of contaminated adulterated street samples. The *mixture which reaches the street purchaser may be from one to three percent to thirty percent pure. The*

*former range is most common.* The *diluted powder is sold in units of about 350 to 400 milligrams* in foil, in glassine packets, "bags," in rubber balloons or in capsules.' (Emphasis supplied.)"

"[8] One gram equals approximately 15.83 grains."

In the case of *People v Eugene Harris,* 43 Mich App 531, 542; 204 NW2d 549, 555 (1972), this Court held that 24 grains of bulk heroin was clearly a usable amount, and that the jury instruction to the effect that any quantity of narcotics was sufficient to support a conviction did not constitute reversible error.

The police chemist's testimony established that the amount of heroin substance in the three packets was .65 grams. It was stronger than ordinary street heroin and was, therefore, clearly a usable amount. This heroin was contained in three metal foil packets and accompanied by another metal foil packet which contained powdered lactose, which is usually used as a dilutant with heroin to make a greater bulk.

Although this Court is not precluded, even absent objection, from considering an allegedly erroneous jury instruction relating to a material element of the offense, reversible error was not committed herein. *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974). We rule that there was no miscarriage of justice resulting from the instructions given by the trial court as to this issue.

## III

*Whether the trial court committed reversible error in instructing the jury that defendant has an interest in the outcome of the case?*

As previously stated in our discussion of Issue II,

trial counsel did not object to the instructions, but on the contrary stated the defendant was satisfied. The now-questioned instruction reads as follows:

"Where, as in this case, the defendant takes the witness stand, it is your duty to treat his testimony fairly and weigh it carefully just as you do the testimony of other witnesses in the case, remembering, however, that he is the defendant in the case and that he has an interest in the outcome of the case. And where there is testimony that a defendant has been involved in prior criminal convictions, this testimony is admitted only for the purpose of determining what weight or credibility you will give to the testimony of the defendant because, as you can see it has no possible tendency to connect it up with this case. It only goes to the weight and credibility which you will give to the testimony of the defendant in the case.

"It is also the function of the jury to determine what weight or credibility you will attach to the testimony of each of the witnesses, taking into consideration the opportunity that the witness has had to know the facts about which he or she seeks to testify here upon the stand, taking into consideration the demeanor of the witness on the stand, the reasonableness of the story that is told; whether the story is conflicting with other testimony that the same witness has given, or other testimony in the case that you believe to be true, and whether it is corroborated by other testimony that you believe to be true in the case."

This instruction was proper. *People v Williams,* 208 Mich 586; 175 NW 187 (1919), *People v Wudarski,* 253 Mich 83; 234 NW 157 (1931), *People v Fred W Thomas,* 7 Mich App 519, 536; 152 NW2d 166, 173 (1967), and 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 671, p 861.

It is not necessary to come to the question of whether there is a miscarriage of justice present herein, for it is obvious that such is not the case.

IV

*Whether there was sufficient evidence present to show that defendant knowingly or intentionally possessed the heroin?*

It is true that defendant's testimony was contrary to that of Officer Robinson, who testified for the people. That presented an issue of fact for the jury to determine. Officer Robinson testified that he saw defendant attempting to hide tinfoil packets in a zipper case. This furtive gesture and action by the defendant was evidence from which the jury could infer the defendant's state of mind that he knowingly held heroin. The jury may infer intent from any fact which fairly proves its existence. 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 20, p 37. Moreover, not only did the packets in fact contain heroin, but the zipper case contained narcotics paraphernalia.

The officer's testimony concerning his observations of defendant and defendant's actions were sufficient to permit the jury to reasonably infer the element of knowingly possessing heroin. Such evidence, if believed by the jury, was sufficient and adequate.

Defendant's position herein is not viable or tenable.

Affirmed.