PEOPLE v. COFIELD.

1. SEARCHES AND SEIZURES — SEARCH WARRANT — SUFFICIENCY OF AFFIDAVITS.

An affidavit is not deemed insufficient to justify issuance of a search warrant merely because it sets out observations of a person other than the affiant, so long as a substantial basis for crediting the hearsay is presented.

2. SAME—PROBABLE CAUSE—SEARCH WARRANT.

Nightly telephone calls to one suspect informing him of a winning number, his relay of such number to other suspects, and the purchase of numbers tickets from the suspects in their homes, constitutes probable cause to believe a crime is being committed sufficient to justify issuance of a search warrant to search the homes for evidence that suspects were conspiring to promote a lottery (CL 1948, § 750.308).

3. SAME—SEARCH WARRANT—PROBABLE CAUSE—EVIDENCE.

Sufficient evidence for magistrate to issue search warrant held, to have been established by many acts of conspiracy to promote a lottery, which were related to affiants by informants and which had occurred 2 or 3 months prior to the issuance of search warrant when supporting affidavits were read in conjunction

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Searches and Seizures § 26.
[2, 3] 47 Am Jur, Searches and Seizures §§ 21-25.

with sworn. reports of surveillance operations, and one informant stated that lottery operations were still being conducted on the date the search warrant was issued (CL 1948, § 750.308).

Appeal from Muskegon; Beers (Henry L.), J. Submitted Division 3 April 4, 1967, at Grand Rapids. (Docket No. 1,119.)     Decided November 29, 1967.

Charles Cofield, Sidney Clark, Cleo Roberts, Isaiah Cheeks, and Malinda Williams were informed against for conspiracy to set up a lottery. Information quashed. The people appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Paul M. Ladas,* Prosecuting Attorney, *George D. Van Epps,* and *William J. Hipkiss,* Successive Chief Assistant Prosecuting Attorneys, *G. Thomas Johnson,* Special Assistant to Prosecuting Attorney and *James S. Ainsworth,* Assistant Prosecuting Attorney.

*Milton R. Henry,* for defendants.

BURNS, P. J.   This is an appeal by the people from a circuit court order which quashed an information on the ground that a search warrant authorizing the search of 5 houses located in Muskegon was illegally issued because the facts related in affidavits made pursuant to statute[*] were insufficient to establish probable cause for the issuance of the warrant.   The affidavit and complaint for the search warrant submitted to the municipal judge stated that the affiants:

"depose that they have probable cause to believe that the following described premises are being used

---

[*] CL 1948, § 750.308 (Stat Ann 1954 Rev § 28.540).

for the purpose of a gambling and lottery enterprise, in which the results are based upon a race, game, contest, act or event, otherwise known as 'numbers' and that goods, chattels, implements, apparati and other material, to-wit: betting memoranda, betting and mutual [*sic*] slips, result slips, money, tally sheets, and other betting paraphernalia, for the purpose of gambling and gaming are unlawfully kept and used."

The 5 premises were then described by address. Attached to this affidavit were affidavits of several police officers which set forth particular observations made by the officers while conducting extensive surveillance of the premises and the defendants. These affidavits also set forth specific facts which were related to the affiants by 3 other individuals designated as John Doe #1, John Doe #2 and John Doe #3.

The trial judge quashed the information on the basis of *People* v. *Sobczak* (1955), 344 Mich 465, and *People* v. *Brynski* (1957), 347 Mich 599, and stated:

"Surveillance and the observation of the defendants carrying packages in and out of houses, meeting with known gamblers, and so forth, are nearly precisely the same as in both of those cases, the *Sobczak* opinion being written by Justice TALBOT SMITH and the *Brynski* opinion being written by Justice EDWARD M. SHARPE. We have nothing more here than was presented in those cases, and in my view it would be a waste of public funds to continue this prosecution."

Plaintiff contends that the surveillance information, with the information furnished by the John Does, established probable cause for the municipal judge to issue the search warrant. Plaintiff relies upon *Jones* v. *United States* (1960), 362 US 257 (80 S Ct 725, 4 L ed 2d 697, 78 ALR2d 233) wherein the

affiant stated that he had no direct knowledge of the presence of narcotics in the apartment searched but had been informed by a reliable informant that the defendant kept a supply of heroin in the apartment. The Court stated on page 269:

"This affidavit was, it is claimed, insufficient to establish probable cause because it did not set forth the affiant's personal observations regarding the presence of narcotics in the apartment, but rested wholly on hearsay. We held in *Nathanson* v. *United States* (1933), 290 US 41 (54 S Ct 11, 78 L ed 159), that an affidavit does not establish probable cause which merely states the affiant's belief that there is cause to search, without stating facts upon which that belief is based. A fortiori this is true of an affidavit which states only the belief of one not the affiant. That is not, however, this case. The question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another. An affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.

"In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge."

William Menzies' affidavit contained facts related to him by John Doe #1 as follows:

"That on March 11, 1964, John Doe #1 told affiant about a Mrs. Monroe Walls of 1759 Russell road who was threatening to go to the police because she was underpaid on a winning number 639, which was the winning number for the second race on

March 10, 1964, and John Doe #1, personally heard Isaiah Cheeks, of 890 Pine street say he would go out to 1759 and attempt to pacify her.

"John Doe #1 has stated to your affiant that a phone call comes in every night at a time between 6:15 p.m. and 7 p.m. to 890 Pine street, the home of Isaiah Cheeks, and that Isaiah Cheeks then phones the number to Malinda Williams, 360 Allen avenue, Cleo 'Tang' Roberts, 445 Houston, Charles Cofield, 690 E. Hume, and Sidney and Alexa Clark, 100 E. Walton, all in Muskegon county, Michigan. John Doe #1 further has stated that he has been present and within hearing distance at 890 Pine street when the said Isaiah Cheeks received the winning number by phone and immediately called the four above-mentioned parties, at approximately 6:30 p.m. on a date in March, 1964.

"John Doe #1 has also been present at the home of Malinda Williams, 360 Allen avenue when she received a call from Isaiah Cheeks giving the winning numbers and then observed Malinda Williams make a number of phone calls giving the winning numbers to other parties, at approximately 6:30 p.m. on a date in March, 1964."

William Gaunt, another affiant, swore that John Doe #2 had given him the following information:

"John Doe #2 has told me on January 27, 1964, that one Cleo Roberts, 445 Houston, picks up betting slips from Velma Rolling, 597 W. Clay street, Muskegon, Michigan, and he told me that the said Velma Rolling is writing numbers bets and has in the past written policy bets. John Doe #2 may be further corroborated on this matter because of my personal knowledge that Velma Rolling's husband gave to myself and other officers, 'policy' betting slips written by Velma Rolling, in March, 1963, which policy betting slips are being held by myself in the Muskegon police department headquarters.   *   *   *

"That John Doe #2 told me on December 20, 1963, Cleo Roberts leaves his house at 445 Houston

avenue at approximately 2 p.m. daily, to make
'pickups' in said operation and surveillance has
shown this to be true, insofar as Cleo Roberts
has been observed leaving 445 Houston at approxi-
mately 2 p.m. on different occasions.

"John Doe #2 has told me on December 20, 1963,
that Charles Cofield leaves his house at 690 E.
Hume at 1 p.m. daily, to make 'pickups' in said
operation and surveillance has shown this to be
true, insofar as Charles Cofield has left 690 E.
Hume at approximately 1 p.m. on different occa-
sions.

"John Doe #2 has told me on December 20, 1963,
that Sidney Clark, 100 E. Walton, is a 'pickup'
man, and characterized Clark as 'a small peg' in
said operation.

"John Doe #2 has told me on December 20,
1963, that the money for the said operation, at that
time, was taken to Isaiah Cheeks' house, 890 Pine
street, daily between 3 o'clock p.m. and 3:30 p.m.

"John Doe #2 told me on December 20, 1963, that
Isaiah Cheeks leaves his house at 890 Pine street
and visits various houses in the Muskegon area, for
the purpose of estimating the daily money receipts.

"John Doe #2 told me on December 20, 1963,
that at that time one Charles Schulz, of 431 Ottawa
street, was active in the numbers operation and
that he definitely knew that the said Charles Schulz
traveled from 360 Allen avenue, home of Malinda
Williams, to 890 Pine street, home of Isaiah Cheeks,
and at such times would have on his person consid-
erable amounts of paraphernalia involved in said
numbers operation."

Affiant Gaunt also added in his affidavit:

"I further state that in October, 1963, I personally
entered the home of Sidney and Alexia Clark, 100
E. Walton avenue, for the purpose of investigating
a murder case, and at that time I observed on a
telephone stand on the west side of the living room,

a number of slips, containing three digit numbers, which, from my experience in working on 'numbers' gambling cases, I immediately identified as betting slips used in a numbers operation, and that Alexia Clark quickly grabbed the said slips and concealed said slips in a sofa on the east side of the room."

Affiant John Jurkas stated that John Doe #3 told him the following facts:

"That Sidney and Alexis Clark, of 100 E. Walton street, were 'writing' numbers, said information being given on December 11, 1963, and that on December 12, 1963, the said John Doe #3 placed a bet, above-mentioned, with Sidney Clark at Clark's home.

"That on December 17, 1963, John Doe #3 made a bet inside 100 E. Walton, for which he did not receive a copy of the betting slip. Officers William Menzies and Ben Gardner saw John Doe #3 go into 100 E. Walton on December 17, 1963, at 2:53 p.m., at which time John Doe #3 said he made this bet.

"That on March 24, 1964, I talked to John Doe #3, and he told me that the said operation was still going on on that date."

The search warrant issued by the municipal judge in the present case was authorized under CL 1948, § 750.308 (Stat Ann 1954 Rev § 28.540) which reads as follows:

"If a person makes oath before justice of the peace or committing magistrate that he has probable cause to believe and does believe that a house or other building, room or place is used as and for a common gaming house, for gaming for money or other property, or is occupied, used or kept for *promoting* a lottery, or for the sale of lottery tickets, or for *promoting* the game known as a policy lottery or policy, or for the buying or selling of pools or registering of bets upon any race, game, contest,

act or event, and that persons resort thereto for any such purpose, such magistrate or trial justice, whether the names of the persons last mentioned are known to the complainant or not, shall, if he be satisfied there is reasonable cause for such belief, issue a warrant commanding the sheriff or his deputy or any constable or police officer to enter and search such house, building, room or place, and if any lottery, policy or pool tickets, slips, checks, manifold books or sheets, memoranda of any bet, or other implements, apparatus or material of any form of gaming be found in said place, to take into custody all the implements, apparatus or material of gaming as aforesaid, including any articles, equipment, furniture, loud speakers and amplifying apparatus, adding machines, calculators, money changers and boxes and money found therein or in or on gambling apparatus, or material used in connection with or for promotion of gambling or a gambling place." (Emphasis supplied.)

The *Sobczak* and *Brynski Cases, supra,* do not consider the information necessary to sustain the issuance of a search warrant, but deal with proofs necessary to submit a case to the jury. In our opinion the affidavits did contain sufficient facts for the municipal judge to determine that there was probable cause to issue the search warrant. The nightly telephone call to Isaiah Cheeks at 890 Pine street informing him of the winning number, the relay of said number to the other defendants at their respective residences, and the purchase of numbers tickets from some of the defendants at their homes, are but some of the many facts stated in the affidavits which indicate that the buildings listed in the search warrant were being used to *promote* a lottery.

While many of the acts stated in the affidavits were committed some time prior to the issuance of the search warrant, John Doe #3 did state that

the operations were still being conducted on the date the search warrant was issued.

These affidavits, when read in conjunction with the surveillance operations of the police department, provided sufficient evidence for the magistrate to find probable cause to issue the search warrant.

The order of the circuit court quashing the information is hereby set aside and the cause remanded to the circuit court for trial.

HOLBROOK and R. M. RYAN, JJ., concurred.