PEOPLE v. BRYNSKI.

1. CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.
   A criminal conspiracy may be established by circumstantial evidence, positive proof not being required.

2. SAME—CIRCUMSTANTIAL EVIDENCE—RELEVANCY.
   Circumstantial evidence of a criminal conspiracy must be within safe bounds of relevancy and be such as to warrant a fair inference of the ultimate facts in order to justify a conviction.

3. SAME—VIOLATION OF GAMING STATUTES—EVIDENCE.
   Evidence that defendant was associating for approximately a year with some people who were convicted of conspiracy to violate the gaming statutes *held*, not sufficient to sustain a conviction (CL 1948, §§ 750.301–750.306, 750.372).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 11 Am Jur, Conspiracy § 37 *et seq.*
[3, 4] 11 Am Jur, Conspiracy § 4 *et seq.*

4. SAME—EVIDENCE—GUILT BY ASSOCIATION.
    Guilt by association, in and of itself, is not sufficient to sustain a
    conviction of criminal conspiracy.

Appeal from Recorder's Court for the City of Detroit; Skillman (W. McKay), J. Submitted December 27, 1956. (Docket No. 75, Calendar No. 46,326.) Decided February 28, 1957.

Stanley Brynski was convicted of conspiracy to violate the statutes against gambling. Reversed and defendant discharged.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, *Ralph Garber* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for plaintiff.

*Michael A. Guest,* for defendant.

SHARPE, J. This is a companion case with *People v. Sobczak,* 344 Mich 465. This defendant, together with 19 or 20 others, was charged with conspiracy to violate the gaming statutes of this State. (CL 1948, §§ 750.301–750.306, inclusive, and § 750.372 [Stat Ann 1954 Rev §§ 28.533–28.538, inclusive, and § 28.-604].)

Sixteen of the persons so charged stood trial and of this number 13 were found guilty, including defendant. It is the theory of the prosecuting attorney that all of the defendants involved banded together to operate a "mutuels" gambling syndicate. When the cause came on for trial more than 25 police officers testified to several hundred observations of the activities of the persons tried in these proceedings. These observations began about November 28, 1949, and continued through to about December 8, 1950.

The evidence upon which the people rely to sustain the conviction may be briefly stated as follows (It should be noted that Ervin Knight, referred to in the testimony of Officer Nowlin was one of the defendants, but the charge against him was dismissed upon motion of the prosecuting attorney at the close of the proofs): Stanley Brynski, defendant, is the owner of Boat Center, Inc. The business consists of several buildings where boats are sold, stored and repaired. Officer Nowlin started the testimony by a disclosure of the method of operation of a "mutuels" syndicate and the rules and details of the "game." He then related his observations on codefendant, Ervin Knight. On December 2, 1949, at 1:19 p.m., he saw Knight come out of 7517 Emily, drive to a gasoline station to change vehicles (from an Olds to a Hudson) and drive away. Nowlin followed Knight for a time. At 2:45 p.m., Knight returned to the Emily address.

On December 3, 1949, at 2:07 p.m., Knight again drove the Olds from the Emily address to the same gasoline station and again transferred to the Hudson. At 2:37 p.m., another person drove up to 7517 Emily and carried in a "large brown paper package." Two minutes later Knight drove up in the Hudson and carried in a "large brown paper sack in his outside—he had a larger package in his left overcoat pocket."

On December 5, 1949, at 1:30 p.m., Knight again switched vehicles at the gasoline station. He drove a very circuitous route back to 7517 Emily and at all times made observations, apparently of officer Nowlin's observations. Knight again came out of 7517 Emily "carrying a large cardboard box, had a smaller package on top of it." He placed these in the car and returned to the house while at all times observing the conduct of others in the vicinity. "He came out the second time with another large cardboard box, about

the size of the first." Both boxes "appeared heavy by the manner in which he was carrying the package." He delivered these packages to 7607 Hildale. About 4 further observations were made on this defendant on this date.

On December 12, 1949, at 1:44 p.m., Knight again switched cars at the gasoline station. He drove the Hudson to a location near the Detroit river. At 2:13 p.m., he entered Boat Center, Inc., at the foot of Leib street. At 2:33 p.m., he left this location, was followed and lost in traffic. (Officer Heath contradicted Nowlin; Heath said he was alone when he made the observations noted in this paragraph.)

On December 12, 1949, at 2:16 p.m., codefendant, Ervin Knight, this defendant and an unidentified man came from an areaway at the Marine Boating Company. At 2:33 p.m., Knight left and the other two remained. The unidentified man wore a marine boating hat, a blue sweater and light pants. They apparently were viewing a Gold Cup boat.

On December 28, 1949, Officer Knowlin was watching the Skipper Marine Sales, Inc., at Jefferson and Beniteau; at 3:52 p.m., a codefendant, Albert Kuzera, and a woman drove up to these premises. Kuzera got out of the vehicle carrying a small package about 4 by 4 by 6 inches, wrapped in a bluish colored paper, and entered the rear door of the premises. The paper is the kind you get on drugstore wrappings. At 4:04 p.m. both Kuzera and this defendant appeared in the doorway. Kuzera left and the defendant remained. At 5:23 p.m., defendant left the premises carrying a package about 6 by 6 inches also covered with bluish paper. He drove to his home. Skipper Marine Sales is a legitimate business, they sell boats and supplies.

On December 29, 1949, at 3:50 p.m., an unidentified man carrying a small paper bag and contents en-

tered the premises of the Skipper Marine Sales and came out about 7 minutes later without the bag.

On December 30, 1949, at about 2:01 p.m., defendant left 2638 Crane and drove to the rear of the Skipper Marine Sales, which he entered; he came out at 2:45 p.m., drove away, but returned in 5 minutes only to again leave a minute later driving to the vicinity of Gratiot and Conners, where he made a left turn and started towards the direction of downtown on Gratiot. He later made a U-turn in the street and then went out Gratiot to a point where codefendant, Ralph Wroblewski, was standing. Wroblewski handed a sack and contents into the car to defendant and defendant drove back to his place of business. At 3:32 p.m., codefendant, Albert Kuzera, drove up to the sales establishment, entering with a small package in his hand. At 3:50 p.m., Kuzera and another unidentified man left the premises minus the package.

On December 30, 1949, Officer Nowlin saw defendant come from 2639 Crane. The residents of that address testified as defense witnesses. They stated that previous to this trial they neither knew nor at any time saw the defendant.

On May 16, 1950, at 10:15 p.m., codefendant, Albert Kuzera, entered the rear door of defendant's home on Burns avenue. At 11:50 p.m., both men came out of the rear door, Kuzera carried a good sized cardboard box into his car and left. Defendant stayed in the doorway until Kuzera got to the car.

On May 25, 1950, at about 10:38 p.m., codefendants, Albert Kuzera and Henry Sobczak were admitted by the rear door into the defendant's home.

On May 31, 1950, at 10:35 p.m., codefendant, Albert Kuzera, was again admitted through the rear door into the defendant's home. Kuzera carried a heavy package with him. At 12:10 a.m., both men

came out of the house and Kuzera was carrying a paper or cloth sack.

On June 30, 1950, Mr. and Mrs. Albert Kuzera entered a private drive at 10431 Dixie highway, New Baltimore, Michigan. The mail box said "S. J. Brynski."

On July 6, 1950, at 12:13 a.m., defendant drove up to his home and apparently codefendant, Albert Kuzera, was waiting for him in another vehicle. Both men entered the home through the rear door. Kuzera was carrying a package in his hands. Immediately the venetian blinds in the sunroom were closed. At 2:20 a.m., Kuzera left with what looked like a canvas sack about 8 inches through and 12 inches high. On this same day at about 12:01 a.m., defendant was observed returning from the Polish Century Club, 1880 East Grand boulevard. This is a prominent Polish business men's club. (Defense witness Jess Gregory, testified that at about 8 p.m., on July 5, 1950, he had a conversation with the defendant in Anchorville, about 50 miles from Detroit.)

On November 3, 1950, at 3:30 p.m., defendant was observed parking his car at Brombach and Poland, enter a confectionery store and leave within a minute.

At the close of the people's case defendant offered evidence in his behalf but did not testify for himself. The cause was submitted to a jury who returned a verdict of guilty for defendant as well as a number of other defendants.

Following the verdict defendant, Stanley Brynski, filed a motion for a new trial in which it is alleged, among other reasons, that the trial court was in error in refusing to grant defendant's motion for a directed verdict of not guilty made at the conclusion of the people's proofs. The trial court denied defendant's motion for a new trial, and upon application we granted defendant's petition for leave to appeal. In

his appeal defendant raises the same questions urged upon the trial court in his motion for a new trial.

It is the claim of the people that the police observations of defendant's activities disclosed such association and relationship with known conspirators sufficient to present a question of fact for the jurors as to the guilt or innocence of defendant.

The rule has long been recognized that a conspiracy may, and generally is, established by circumstantial evidence and that positive proof is not required but the circumstances must be within safe bounds of relevancy and be such as to warrant a fair inference of the ultimate facts. See *People* v. *Beller,* 294 Mich 464.

This case is a companion case to *People* v. *Sobczak, supra.* Both defendants were tried together. In the above case we reversed the conviction of Sobczak. We there stated at page 469:

"What all of this testimony comes down to is that the defendant was keeping bad company. There is, at least, a breath of suspicion that he was involved somehow in this nefarious business. But it is no more than a suspicion. There may have been valid reasons for the associations described."

We note that in the trial of this case some codefendants made damaging admissions at the time of their arrest, but none of these admissions implicated defendant. The most that can be said in behalf of the people is that for a period of approximately one year defendant was associating with some people who were convicted in the present proceeding.

Guilt by association, in and of itself, is not sufficient to sustain a conviction. It follows that the judgment

of conviction is reversed and defendant discharged without a new trial.

DETHMERS, C. J., and SMITH, KELLY, CARR, and BLACK, JJ., concurred.

EDWARDS and VOELKER, JJ., took no part in the decision of this case.