PEOPLE v ATLEY

Opinion of the Court

1. Conspiracy—Marijuana—Sale—Intent—Agreement to Sell—
Evidence.

Evidence was insufficient to infer a conspiracy to sell marijuana
from the facts established by the testimony at trial where from
the established fact of acquisition of 127 pounds of marijuana
an intent to sell can be inferred, but not agreement to sell,
testimony indicating expectation of payment does not establish
the facts of agreement to be paid from the proceeds of a sale in
Michigan, an informant's testimony that defendant said he
intended to sell the marijuana does not allow the Michigan
Supreme Court to draw the second inference of an agreement
to sell either because there was no evidence that any other
person knew of the discussion between defendant and the
informant regarding sale, and what defendant and others actu-
ally intended to do insofar as payment of the harvesters of the
marijuana was concerned, or insofar as where the marijuana
was to be sold, whether Michigan or elsewhere, is on the record
a matter of conjecture (MCLA 335.152, 750.157a).

2. Criminal Law—Proof—Reasonable Doubt—Evidence.

The test in criminal cases is whether the people have proven

References for Points in Headnotes

[1] 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 16, 34, 35, 37, 45.
[2] 30 Am Jur 2d, Evidence §§ 1168–1175.
  Reasonable doubt rule as applicable to evidence in civil case of facts
  amounting to felony or misdemeanor, 124 ALR 1378.
[3] 16 Am Jur 2d, Conspiracy §§ 1, 43.
  Criminal conspiracies as to gambling, 91 ALR2d 1148.
[4] 16 Am Jur 2d, Conspiracy §§ 9, 10.
[5, 10, 12–16] 25 Am Jur 2d, Drugs, Narcotics and Poisons § 45 et seq.
[6] 16 Am Jur 2d, Conspiracy §§ 7, 8.
[7] 16 Am Jur 2d, Conspiracy §§ 36, 59.
  Criminal conspiracies as to gambling, 91 ALR2d 1148.
[8, 13] 16 Am Jur 2d, Conspiracy §§ 38–40, 61.
[9] 67 Am Jur 2d, Sales § 94.
[11] 21 Am Jur 2d, Criminal Law §§ 81, 82.

beyond a reasonable doubt every element of the crime charged by competent direct or circumstantial evidence.

3. CONSPIRACY.

A conspiracy is a partnership in criminal purposes.

4. CONSPIRACY—SPECIFIC INTENT.

A twofold specific intent is required for conspiracy: a combination with others to do what is unlawful.

5. CONSPIRACY—MARIJUANA—KNOWLEDGE—SALE—INTENT—PROOF.

Defendant's intent to sell marijuana must be established in a prosecution for conspiracy to sell marijuana, and to establish that intent, there must be evidence of knowledge of the unlawful purpose of sale; however, to prove the crime of conspiracy it must further be proven that that intent, including that knowledge, was possessed by *more than one* individual since there can be no conspiracy without a combination of two or more persons (MCLA 335.152, 750.157a).

6. CONSPIRACY—UNLAWFUL AGREEMENT—PROOF.

The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons and direct proof of agreement is not required, nor is it necessary that a formal agreement be proven; it is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact.

7. CONSPIRACY—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—INFERENCE.

Conspiracy may be established, and frequently is established by circumstantial evidence, and may be based on inference; however, the circumstances must be within safe bounds of relevancy and be such as to warrant *a fair inference of the ultimate facts.*

8. CONSPIRACY—INFORMANT—COCONSPIRATOR.

A police informant only feigned participation in a criminal enterprise and therefore could not lawfully be a coconspirator even if the facts otherwise showed he appeared to be one.

9. CONSPIRACY—INFERENCE—SALE—JOINT ACQUISITION.

To infer the ultimate fact of conspiracy to sell from the fact of joint acquisition is not a fair inference.

10. CONSPIRACY—MARIJUANA—PRESUMPTIONS—INFERENCE—EVIDENCE.

Conviction of conspiracy to sell marijuana must be reversed where no statutory presumption is involved and an inference

was impermissibly built upon another inference, both inferences based upon the same evidence.

11. CRIMINAL LAW—INFERENCES.

Inferences may be drawn from established facts; but inference may not be built upon inference.

### CONCURRING OPINION

#### T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and LEVIN, JJ.

See headnotes 1–11.

12. CONSPIRACY—MARIJUANA—SALE—INFORMANT—INSTRUCTIONS—
APPEAL AND ERROR—COCONSPIRATOR.

To the extent that jury instructions allowed a finding of a conspiracy to sell marijuana between defendant and an informant, who encouraged the commission of the crime charged in acting at all times with the knowledge and consent of the police, they were in error; an informant who acts with the knowledge and consent of the police cannot, as a matter of law, be considered a coconspirator.

13. CONSPIRACY—INFORMANT—INSTRUCTIONS.

Jury should be cautioned that while a police informant may be used to prove the crime of conspiracy, he may not be considered a person with whom the defendant conspired.

### DISSENTING OPINION

#### M. S. COLEMAN and J. W. FITZGERALD, JJ.

14. CONSPIRACY—EVIDENCE—MARIJUANA—SALE.

*Evidence was sufficient to warrant a verdict of conspiracy to sell marijuana where a jury could reasonably find from the evidence at trial that defendant intended to sell at least some of the 127 pounds of marijuana and would pay his confederates with the proceeds, and could infer the existence of the agreement necessary to the charge from the prior preparation and planning engaged in by the parties and disregard the denials by defendant's alleged conspirators, and where the prior combination and agreement to receive proceeds by those involved was reasonably established and points to the existence of the charged conspiracy.*

15. CONSPIRACY—MARIJUANA—SALE—PROOF—EVIDENCE—INSTRUC-
TIONS.

*Instruction that "[p]roof of the formal agreement is unnecessary to support a finding of guilt, and it is sufficient if the circumstances, acts, and conduct of the parties are such as to show agreement in fact" and that "[s]uch an agreement may be established by evidence that the parties steadily pursued the same object, whether acting separately or together, by common or different means, but ever leading to the same unlawful result" accords with existing Michigan precedent where the defendant was accused of conspiracy to sell marijuana.*

16. DRUGS AND NARCOTICS—MARIJUANA—SALE—INFERENCE—CON-
SPIRACY—EVIDENCE.

*Jury could fairly infer that the object of a transaction was the sale of marijuana from the circumstance that 127 pounds of marijuana, even when reduced to useable form, was too great a quantity for defendant's personal consumption, from defendant's lack of funds prior to the trip to marijuana fields in Kansas and Missouri, from the unpaid status of the harvesters, and from the statement and promise made to an informer; the jury's verdict of guilty of conspiring to sell marijuana indicated it was persuaded that an agreement to sell existed and such conclusion was supported by competent evidence.*

Appeal from Court of Appeals, Division 3, Lesinski, C. J., and J. H. Gillis and Peterson, JJ., affirming Van Buren, David Anderson, Jr., J. Submitted March 13, 1974. (No. 11 March Term 1974, Docket No. 54,783.) Decided August 2, 1974.

45 Mich App 421 reversed.

Lewis J. Atley was convicted of conspiracy to sell marijuana, unlawful possession of marijuana, and unlawful control of marijuana. Convictions for possession and control of marijuana vacated. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General,,, *Robert A. Derengoski,* Solicitor General, and *William C. Buhl,* Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Stuart M. Israel),* for defendant on appeal.

WILLIAMS, J. The substantive issue raised by this case is whether there is sufficient evidence to sustain the jury's verdict of guilt, beyond a reasonable doubt, of the crime of conspiracy to sell marijuana. We find the evidence insufficient to infer a conspiracy to sell marijuana from the facts established by the testimony at trial.

## I —DETAILED FACTS

### A. Crimes Charged

Defendant Atley and two others, Loren Eaton and Michael Conley, were stopped on I-94 in Van Buren County on July 3, 1970, pursuant to a tip from a police informant who had accompanied the alleged coconspirators to Missouri to pick marijuana. Atley was arrested after 127 pounds of raw marijuana was found in the trunk of the vehicle.

A three-count information charged that Atley:

"[F]eloniously and unlawfully did conspire, combine, confederate and agree together with Loren Victor Eaton and divers[e] other persons to sell a narcotic drug, to wit, marijuana * * * ." MCLA 750.157a; MSA 28.354(1); MCLA 335.152; MSA 18.1122.

He was also charged with unlawful possession of marijuana and unlawful control of marijuana, MCLA 335.153; MSA 18.1123.

Atley stood trial alone. The outcome of proceedings, if any, against the alleged coconspirators is not clear from the record in this case. It is clear,

however, that the police informant was not arrested or charged.

It was the theory of the prosecution that Atley conspired with Eaton, Hughes, and others to make an automobile trip to Kansas and Missouri to harvest a marijuana field and haul the marijuana back to Michigan where, allegedly, the plan was to dry it, cure it, and sell it.

## B. Police Informant

The police informant, Michael Conley, testified that he had known Atley "[a]pproximately four, maybe five years" when Atley approached him in June of 1970 concerning the possibility of driving a truck to haul marijuana from Kansas to Michigan. The informant stated that he "was unemployed at the time" and is characteristically unemployed "[a] great deal." He testified that he took the initiative in contacting the FBI after Atley first suggested the marijuana picking expedition to him, and was in contact with police from the alleged planning stage through arrest.

The informant furnished the transportation for Atley for trips to Kalamazoo during the alleged planning stage of the marijuana harvesting expedition, and himself rented and drove to Kansas and Missouri the automobile in which the marijuana was found. Atley reportedly had no automobile of his own and could not rent the car taken to Kansas and Missouri because he was underage.

There is no evidence that the informant was subject to criminal charges in this case. He testified: "Nothing was ever discussed about my conviction, or immunity, or anything." A prior misdemeanor conviction of the informant's was brought out on cross-examination but was not tied to his willingness to be an informant in this case.

*C. Allegedly Conspiratorial Meetings*

The prosecution's case was founded on the testimony of police informant Conley regarding four meetings at which the conspiracy was allegedly planned. We set forth the informant's testimony pertinent to the planning of the crime in detail, as it is crucial to the proof of the conspiracy count.

The first meeting, according to the police informant, was at a restaurant in Marshall, Michigan, in June, 1970. The informant testified that Atley:

"[M]entioned that he wanted me [the informant] to drive a truck hauling marijuana from Kansas and Missouri to Michigan."

The informant further testified that Kenneth Mills, a friend of Atley's, was present at this conversation and was to have been a participant in the expedition to Kansas and Missouri. Mills did not in fact accompany the alleged coconspirators to Kansas and Missouri, and the informant did not have "the slightest idea" what became of Mills. Mills was not produced as a witness at defendant's trial.

The second meeting, at which Atley and the informant alone were present, reportedly occurred at Atley's place of employment on a Friday evening. The only substantive conversation at this meeting pertaining to the allegation of conspiracy is the informant's statement that "he [Atley] asked me if I could take him to Kalamazoo."

The third meeting was in Kalamazoo. The informant testified that he drove Atley to a farmhouse there, and:

"I waited in the car while the defendant, Mr. Atley, went inside. And he returned several minutes later, and we left."

The informant testified further that Atley had summarized his conversation with one Rick Ash at the farmhouse, and that, basically, Atley had gone there to:

" * * * get some money * * * . * * * I couldn't say whether he [Atley] acquired the money while he was in the house or not, but he came out and as we were departing, he showed me some money that he had. * * * As I was led to believe it was over $200."

The fourth and critical meeting for purposes of the alleged conspiracy to sell marijuana occurred at Michael Hughes' home in Kalamazoo, where Hughes, Eaton, the informant, and Atley allegedly met. The informant recalled the following discussion preparatory to the trip to Kansas:

"[T]he defendant [Atley] mentioned something about going to Kansas, and Michael Hughes mentioned something about knowing some people in Kansas. * * *

"I believe he [Eaton] was asked if he wanted to make the trip.

*"Q. [by the prosecutor]* Now, let me ask you this last question: Do you recall any conversation with the defendant and or others specifically with the defendant about what was to be done with all this weedy substance that was being cut?

"*A.* The weedy substance [the marijuana] was going to be dried, and cured, and sold."

The informant was more specific regarding the agreement that he alleges existed between Atley and himself:

*"Q. [by the defense attorney, on cross-examination]* * * * Did he [Atley] ever tell you specifically that he intended to sell this [marijuana], or is this your assumption?

"*A. [by Conley, the police informant]* He [Atley] said that he intended to sell it and give me part of the profit.

"*Q.* I see. Did he say where?

"*A.* No, sir.

"*Q.* Or when?

"*A.* No, sir.

"*Q.* Or how?

"*A.* No.

"*Q. You had no agreement to assist him [Atley] in selling it, did you?*

"*A. No, sir.*

"*Q.* Well, isn't it actually true that this matter of sale is your assumption that this is what he intended to do with this amount?

"*A.* It wasn't an assumption. It was a fact that the defendant related to me.

"*Q.* I see. And exactly what did he say, if you recall?

"*A.* He said that it was going to be sold and I would receive a percentage of the profit.

"*Q.* I see. What percentage were you supposed to receive? Was it a fixed percentage?

"*A.* Not a fixed percentage, but well over $500. That is what I was led to believe.

"*Q.* Well, you were led to believe because apparently he said something, or you thought something was said. Were you supposed to get two percent, or five percent—

"*A.* Not based on the exact percentage. Depending on what he could sell it for. But I was assured it would be over $500.

"*Q.* When were you supposed to get this?

"*A.* He didn't say any specific date.

"*Q. Well, there was no agreement with you to assist in the sale of it; right?*

"*A. Right. I was supposed to be clean of the whole thing.*

"*Q.* You were supposed to be clean. I see. So that as a matter of fact he simply engaged you to go out there with him and come back; is that right?

"*A.* He engaged my services as a driver, yes, sir."
(Emphasis added.)

*D. Testimony of the Alleged Coconspirators*

Michael Hughes, Rick Ash and Loren Eaton

were the only alleged participants in the conspiracy produced as witnesses at Atley's trial.

Michael Hughes took the Fifth Amendment and gave no substantive testimony.

Rick Ash testified:

"I do not recall if I saw him [Atley] in June or exactly when. I remember him being out at my house a number of different times last year, but I couldn't say when."

In response to the question whether he had ever given Atley money, he answered, "No, sir."

Loren Eaton recounted the planning of the trip to Kansas and Missouri as follows:

"*Q. [by the prosecutor]* Now could you tell us how you happened to come about going out to Kansas and cutting this substance and putting it in the bags?

"*A. [Eaton]* I was asked by Mr. Atley and Mr. Conley to go with them.

"*Q.* And where were you when you were asked?

"*A.* I was at, I think, Mr. Hughes' house.

* * *

"*Q.* And what exactly were you asked to do?

"*A.* Go to Kansas and pick marijuana.

"*Q.* And what if anything were you to get out of this?

"*A.* I was to be paid for doing this.

"*Q.* And by whom were you to be paid?

"*A.* Mr. Atley.

"*Q. [by the defense attorney, on cross-examination]* Did you ever have any arrangements or agreement with Mr. Atley or anybody else to get this marijuana for the purpose of bringing it back in Michigan to sell?

"*A.* Not for this purpose, not that I know of.

"*Q.* I see. Was there ever any discussion with you about getting this marijuana for the purpose of bringing it back here to sell?

"*A.* Not in any particular form. *It was just to go pick it. There was never mentioned of any sales of it.*

"*Q.* I see. You were—then the arrangement was apparently that you were going to be paid something to go out and help pick it or harvest it?

"*A. I was a hired hand.*

"*Q. And was there any discussion as to how or who was going to dispose of it when it got back to Michigan?*

"*A. No sir, there wasn't.*

"*Q. With you?*

"*A. No, there wasn't.*"

(Emphasis added.)

## *E. Jury Verdict and Appeal*

On the basis of the testimony of the police informant, the other participants, and the police officers' testimony regarding the discovery of 127 pounds of marijuana in the automobile, the jury found Atley guilty of all counts charged: unlawful possession of marijuana, unlawful control of marijuana and conspiracy to sell marijuana.

The trial judge vacated Atley's convictions for possession and control of marijuana, however, on the basis of this Court's decision in *People v Sinclair,* 387 Mich 91; 194 NW2d 878 (1972). The trial judge also reduced Atley's original sentence of 20–25 years imprisonment on the conspiracy to sell marijuana count to 1-1/2 to 4 years, on the authority of *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972). The Court of Appeals affirmed the conspiracy conviction with reduced sentence. 45 Mich App 421; 206 NW2d 783 (1973).

## II —ARGUMENTS ON APPEAL

The issue for our decision is whether the evidence as a whole, including reasonable inferences, is sufficient to warrant the jury's verdict that Atley was guilty of the crime of conspiracy to sell

marijuana. The test in criminal cases is whether the people have proven beyond a reasonable doubt every element of the crime charged by competent direct or circumstantial evidence. See *People v Gadson,* 348 Mich 307, 310; 83 NW2d 227 (1957); *People v Franczyk,* 315 Mich 384; 24 NW2d 87 (1946).

At the conclusion of the people's proofs at trial, the defense counsel made a motion to dismiss the conspiracy to sell marijuana charge. The motion was argued at length but never specifically ruled upon.

On appeal, it is Atley's contention that the only evidence adduced by the prosecution against him was that there was an agreement between several persons to go to Missouri to pick the marijuana plant. But he asserts that the evidence is insufficient as a matter of law to show a conspiracy to *sell* marijuana in Michigan, even if credence were given to the informant's testimony that Atley had expressed an intent to sell the marijuana, since the informant himself disclaimed any agreement with the defendant regarding its sale; Eaton testified there had been no arrangement to sell the marijuana, only an agreement to pick it; and Hughes exercised his Fifth Amendment right not to testify. Defendant argues that there being no such legal entity as a one-man conspiracy, a conspiracy to sell marijuana was not proven.

The prosecutor contends, however, that the conspiracy to sell can be established on the basis of inference. The prosecutor argues that the informant's testimony establishes that Atley told the informant, at least, his intention to sell the marijuana; that Eaton and Hughes had not been paid for their work harvesting marijuana; that they knew the money had to come from somewhere;

and, logically, it would come from the sale of the marijuana they had picked.

### III —ELEMENTS OF CONSPIRACY

"A conspiracy is a partnership in criminal purposes", *United States v Kissel,* 218 US 601, 608; 31 S Ct 124; 54 L Ed 1168 (1910). A twofold specific intent is required: a combination with others to do what is unlawful. *Conspiracy,* 28 La L Rev 534, 535 (1968); see also 1 Wharton, Criminal Law & Procedure, 183–184.

Intent to conspire,

"[w]hile it is not identical with mere knowledge that another purposes unlawful action * * * is not unrelated to such knowledge. Without the knowledge, the intent cannot exist. *United States v Falcone* [311 US 205; 61 S Ct 204; 85 L Ed 128 (1940)] [footnote omitted]. Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal. *Ibid.* This, because charges of conspiracy are not to be made out by piling inference upon inference * * * ." *Direct Sales Co v United States,* 319 US 703, 711; 63 S Ct 1265; 87 L Ed 1674 (1943).

Therefore, defendant's intent to sell marijuana must be established in the present case, and to establish that intent, there must be evidence of knowledge of the unlawful purpose of sale. To prove the crime of conspiracy, however, it must further be proven that that intent, including that knowledge, was possessed by *more than one* individual since there can be no conspiracy without a combination of two or more persons. *People v DiLaura,* 259 Mich 260; 243 NW 49 (1932). Where only one person has knowledge of the unlawful

end, there is no combined intent to do what is unlawful. Perkins, On Criminal Law, 545 (1957).

It must be shown that the respective conspirators intended to further, promote, or cooperate in the unlawful enterprise. The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons. *People v Smith,* 296 Mich 176; 295 NW 605 (1941); *People v Asta,* 337 Mich 590, 611; 60 NW2d 472 (1953). Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. Wharton, *supra,* 178–179.

Furthermore, conspiracy may be established, and frequently is established by circumstantial evidence, *People v Pitcher,* 15 Mich 397, 403 (1867), and may be based on inference. *People v Robinson,* 306 Mich 167, 175; 10 NW2d 817 (1943); see also *People v Huey,* 345 Mich 120, 127; 75 NW2d 893 (1956). However:

"[T]he circumstances must be within safe bounds of relevancy and be such as to warrant *a fair inference of the ultimate facts."* (Emphasis added.) *People v Beller,* 294 Mich 464, 469; 293 NW 720 (1940).


## IV —WAS THERE AN AGREEMENT TO SELL?

### A. Agreement to Sell Marijuana Unfairly Inferred

This case boils down to the question whether there was *an agreement to sell* marijuana, an agreement between Atley and Eaton or any other person other than Conley. Conley only feigned participation in the criminal enterprise and therefore could not lawfully be a coconspirator even if

the facts otherwise showed he appeared to be one.[1]
1 Wharton's Criminal Law & Procedure, Conspir-
acy, § 83, p 180; 15A CJS, Conspiracy, § 37, p 731.
See *e.g., DeLaney v State,* 164 Tenn 432; 51 SW2d
485 (1932); *Regle v State,* 9 Md App 346; 264 A2d
119 (1970); *Sears v United States,* 343 F2d 139 (CA
5, 1965). This in turn boils down to whether an
unlawful agreement between two people to sell
something can be inferred from the fact that they
acquired it together, and that one had not been
paid for his part in the acquisition, while it ap-
peared that the other intended to sell it.

There is little doubt but that there was a joint
venture between Atley, Eaton, the informant, and
Hughes to harvest marijuana, and that they had
possession and control of it when stopped by police
on the interstate highway. Furthermore, there is
direct testimony by the informant that Atley had
told him he intended to sell the marijuana. But
the crime charged is not harvesting, nor possession
and control of marijuana, nor sale by Atley alone;
the crime charged is *conspiracy to sell* marijuana.

The trial judge, David Anderson, Jr., recognized
the problem when confronted by defendant's mo-
tion to quash the conspiracy count. He said:

"I have difficulty in this case, and I am frank to say
that I do. We have ample evidence that these parties
have committed two of the offenses charged in the
information, that they participated in having possession

---

[1] As indicated Conley could not lawfully be a coconspirator. How-
ever, the testimony Conley gave that defendant "agreed to give me a
sum of the profits received for the sale", etc., while it is evidence that
defendant intended to sell the marijuana and pay Conley from the
proceeds, is not direct evidence that Conley was a coconspirator and,
of course, says nothing at all as to whether there was an *agreement*
between defendant and Eaton, the only possible coconspirator in this
case about whom this is not any evidence at all, and hence there can
be no inference whatsoever from Conley's testimony as to the exis-
tence between defendant and Eaton of an agreement to sell, which is
the gravamen of the charge in this case.

and control of marijuana without a license. But this charges a conspiracy to sell, not a conspiracy to acquire, not a conspiracy to possess or a conspiracy to control marijuana, but a conspiracy to sell. And I have some difficulty in bridging the gap between being hired, and this is what the testimony amounts to, being hired to go out and harvest a crop for delivery to a person who has expressed an intention that he was going to dry it and sell it, but without any agreement or any conversation as to participation in the actual sale, being sufficient to establish a conspiracy, which is an agreement or an understanding to make a sale."

The trial judge, however, never specifically ruled on the motion to quash the conspiracy count. Defense counsel renewed the motion subsequent to the jury's verdict.

The Court of Appeals, however, did attempt to bridge the gap between the proof of a joint venture to harvest and possess the marijuana and proof of an unlawful agreement to sell it. The Court of Appeals said:

"The evidence supporting the conspiracy charge was sufficient to warrant the finding of guilt. The jury could reasonably find from the evidence at trial that defendant intended to sell at least some of the 127 pounds of marijuana and would pay his confederates with the proceeds. The jury could infer the existence of the agreement necessary to the charge from the prior preparation and planning engaged in by the parties and disregard the denials of defendant's alleged coconspirators. While it may have been designed that only defendant would sell the marijuana, the prior combination and agreement to receive proceeds by those involved was reasonably established and certainly points to the existence of the charged conspiracy."

The gap in proof may be narrow but the attempted bridge is not strong enough to sustain the conviction for conspiracy to sell marijuana. In

passing, there was no testimony establishing that Eaton was "to receive proceeds" as the Court of Appeals states. The testimony in evidence indicated only that Eaton was to be paid. The "prior combination and agreement" to harvest plus the testimony that defendant Atley intended to sell the marijuana do not directly establish in logic that the defendant and Eaton or any other person *agreed to sell* the marijuana. There was, in fact, no testimony that Eaton ever knew that defendant *intended to sell* the marijuana let alone that Eaton *agreed* with defendant *to sell* the marijuana.

That there had been no payment of the harvesters, and that the men had returned to Michigan with the marijuana in their vehicle, are established facts. From the established fact of acquisition of 127 pounds of marijuana, we can infer an intent to sell, but that is as far as inference may take us.

It is not "a fair inference," *Beller, supra; People v Sobczak,* 344 Mich 465; 73 NW2d 921 (1955) to infer the ultimate fact of conspiracy to sell from the fact of joint acquisition. The ultimate fact of intent to sell might be inferred, but not agreement to sell. What they actually intended to do insofar as payment was concerned, or insofar as where the marijuana was to be sold, whether in Michigan or elsewhere, is on this record a matter of conjecture. Testimony indicating expectation of payment does not establish the facts of agreement to be paid from the proceeds of a sale in Michigan, not to say agreement to sell.

## B. *Inference Impermissibly Built Upon Inference*

There is an additional reason why this conviction must be reversed—an inference was imper-

missibly built upon another inference, both inferences based upon the same "evidence."

The "no inference upon an inference" doctrine is a difficult concept at best, but it clearly applies to the instant situation. In this case, you have to find Eaton or someone else tied into an agreement to sell in order to find conspiracy.

In other words, you would have to infer from finding Eaton in the car with Atley and the marijuana, first, that Eaton or Atley *intended to sell* marijuana and, second, that in connection with such intention to sell, there was an *agreement* between Atley and Eaton to accomplish the same. Therefore, to find conspiracy, you would have to pile one inference, agreement to sell, on top of another, intent to sell, based on identical evidence, *i.e.,* that Eaton was in the car with Atley and the marijuana. Inferences may be drawn from established facts; but inference may not be built upon inference. *People v Petro,* 342 Mich 299, 307–308; 70 NW2d 69 (1955).[2]

[2] We recognize that the *Petro* rule is from the language of one opinion of a 3-3-2 Court split where two Justices concurred in the result of the three Justices whose opinion we rely upon. Nonetheless, we follow the *Petro* rule first, because "no inference upon inference" is strongly imbedded in the civil law of Michigan and it is therefore *a fortiori* applicable to criminal law which requires a stronger standard of proof. *See Ginsberg v Burroughs Adding Machine Co,* 204 Mich 130, 137; 170 NW 15 (1918); *Glenn v McDonald Dairy Co,* 270 Mich 346, 350; 259 NW 288 (1935); *Ash v Great Lakes Greyhound Lines,* 337 Mich 362, 369; 60 NW2d 166 (1953); *Kroon v Kalamazoo County Road Commission,* 339 Mich 1, 6–7; 62 NW2d 641 (1954).

Second, the *Petro* rule has been cited as authority by a number of Court of Appeals panels. *See* for example, *People v McGregor,* 45 Mich App 397, 399; 206 NW2d 218 (1973); *People v Smith,* 21 Mich App 717, 721–723; 176 NW2d 430 (1970); *People v Cunningham,* 20 Mich App 699, 702–703; 174 NW2d 599 (1969).

Third, the "no inference upon an inference" rule is recognized as established Michigan criminal law by Michigan's leading criminal law and procedure hornbook. *See* 1 Gillespie, Michigan Criminal Law & Procedure (Supp 1974), § 388, p 220.

We have considered the fact that Court of Appeals panels in *People v Helcher,* 14 Mich App 386; 165 NW2d 669 (1968) and *People v*

"It is the duty of courts to reverse criminal convictions based upon an inference upon an inference in the absence of a statutory presumption." *Petro, supra,* 308.

No statutory presumption is involved here. We must reverse the conspiracy conviction.

## V —CONCLUSION

Conviction of defendant Atley of conspiracy to sell marijuana was erroneous, first, because the requisite agreement with some other person to sell marijuana was unfairly inferred on the evidence adduced at trial, and, secondly, because the prose-

*Horowitz,* 37 Mich App 151; 194 NW2d 375 (1971) cited approvingly the following language from *Dirring v United States,* 328 F2d 512, 515 (CA 1, 1964); *cert den* 377 US 1003; 84 S Ct 1939; 12 L Ed 2d 1052 (1964); *reh den* 379 US 874; 85 S Ct 27; 13 L Ed 2d 83 (1964):

"The defendant cautions us against 'piling inference upon inference.' As interpreted by the defendant this means that a conviction could rarely be justified by circumstantial evidence. [Citation omitted.] The rule is not that an inference, no matter how reasonable, is to be rejected if it, in turn, depends upon another reasonable inference; rather the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt. [Citations omitted.] If enough pieces of a jigsaw puzzle fit together the subject may be identified even though some pieces are lacking. Reviewing the evidence in this case as a whole, we think the jury was warranted in finding beyond a reasonable doubt the picture of defendant Dirring."

This language from *Dirring* must be used with caution. First of all, the first two sentences refer particularly to the *Dirring* case which in fact did not involve an inference upon an inference as the language of the court itself suggests when it says "[a]s interpreted by the defendant." Actually, the only inference involved in *Dirring* was whether a photograph identified by a witness as the culprit was a picture of the defendant. This certainly is not an inference upon an inference.

Secondly, the *Dirring* statement "[i]f enough pieces of a jigsaw puzzle fit together the subject may be identified even though some pieces are lacking", is too subjective a view to establish a proper jury instruction or to decide whether a case may go to the jury or be directed notwithstanding the verdict. Obviously, if a missing piece was the only evidence that established *mens rea* or identified the defendant, there would not be enough of a picture to establish guilt. Thus the *Dirring* language, in its unconditional form, is clearly inadequate.

cution's case rested upon an impermissible piling of inference upon inference.

The Court of Appeals is reversed. This cause is remanded for proceedings not inconsistent with this opinion. .

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and LEVIN, JJ., concurred with WILLIAMS, J.

SWAINSON, J., *(concurring).* I concur in the opinion written by Justice WILLIAMS. I do, however, believe that it is necessary to elaborate on one aspect of this case in the event that it is retried.

At trial, the people produced four alleged coconspirators to testify. Michael Hughes invoked the Fifth Amendment privilege and did not testify. Loren Eaton and Rick Ash generally denied knowledge of appellant's alleged plan to sell marijuana and also denied any agreement with appellant to engage in such a sale. Only the informant, Michael Conley, testified that Atley intended to sell the marijuana and to pay Conley from the profits of the sale.

From this testimony, I think that it is quite likely that the jury found a conspiracy to sell between Atley and Conley. To the extent that the jury instructions allowed such a finding, I believe that they were in error. Informant Conley was not a coconspirator later given immunity, but an informant from the beginning who helped further the expedition. He did not merely present the opportunity to Atley to violate the law; instead, he furnished the necessary transportation to plan the harvest of the substance, rented the vehicle to haul the material, and helped harvest it. Conley, in short, encouraged the commission of the crime

charged in acting at all times with the knowledge and consent of the police.

An informant who acts with the knowledge and consent of the police cannot, as a matter of law, be considered to be a coconspirator. "[T]o establish a criminal conspiracy the state must prove an agreement on the part of two or more persons, and it must prove that the common intent flowing from the agreement was specific and was criminal." Harno, *Intent in Criminal Conspiracy,* 89 U Pa L Rev 624, 635 (1941). The informant, by his actions, demonstrates that he did not possess the specific intent to violate the law and further that whatever agreement he entered into with the defendant was feigned for the purpose of apprehending the defendant. As the Tennessee Supreme Court clearly held in *DeLaney v State,* 164 Tenn 432, 438; 51 SW2d 485, 487 (1932):

"There can be no criminal combination or conspiracy unless at least two persons guilty unite or agree in the purpose to pursue the unlawful enterprise; and if one of the two only feigns acquiescence in the proposal of the other, without criminal intent, there is no such agreement or concurrence in fact, and no conspiracy."

See also, *Woodworth v State,* 20 Tex App 375, 382 (1886); *State v Horton,* 275 NC 651, 657; 170 SE2d 466, 470; 91 ALR2d 706 (1969).

If this case is retried, I suggest that the jury be cautioned that while a police informant may be used to prove the crime of conspiracy, he may not be considered a person with whom the defendant conspired. "There can be no conspiracy unless there is a union of wills, and if only one person feigns acquiescence in a proposal of another to pursue an unlawful enterprise, there is no conspiracy. One person cannot conspire with himself."

*State v Horton,* 275 NC 651, 657; 170 SE2d 466, 470; 91 ALR2d 706 (1969).

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, and LEVIN, JJ., concurred with SWAINSON, J.

M. S. COLEMAN, J. *(dissent)*. The Court has reversed defendant's conviction because it finds "the evidence insufficient to infer a conspiracy to sell marijuana from the facts established by the testimony at trial." Because the record persuades me that the jury's conclusion was based upon competent evidence, I must dissent.

### FACTS

The pertinent charge against defendant accused him of conspiring to sell marijuana. He was arrested when found in possession of 127 pounds of marijuana. The arrest occurred when defendant and his confederates were returning after obtaining the marijuana from fields in Kansas and Missouri.

When the project was conceived, defendant was without funds, transportation or assistants. He recruited Michael Conley. When first contacted, Conley went to the authorities. His assistance permitted the authorities to intercept the marijuana as it was brought into the state.

The trip was financed by $200 advanced to defendant by an unknown person. Defendant persuaded two other men, Loren Eaton and Michael Hughes, to join the expedition. Defendant financed the trip, including expenses and tools, although under the circumstances none of the participants were paid for their work.

At trial, Conley testified that the marijuana "was going to be dried, and cured, and sold." He

said defendant "agreed to give me a sum of the profits received for the sale of the substance that we were going to obtain." Conley recalled defendant saying "that he intended to sell it and give me part of the profit."

Michael Hughes refused to testify. Loren Eaton said he "was a hired hand" employed only to assist in the harvest of the marijuana. He said he was to be paid for his work. He denied knowledge of any intended sale of the marijuana.

The Court of Appeals affirmed defendant's conviction. 45 Mich App 421; 206 NW2d 783 (1973). The evidence was deemed sufficient to warrant the verdict. The Court wrote:

"The jury could reasonably find from the evidence at trial that defendant intended to sell at least some of the 127 pounds of marijuana and would pay his confederates with the proceeds. The jury could infer the existence of the agreement necessary to the charge from the prior preparation and planning engaged in by the parties and disregard the denials of defendant's alleged coconspirators. While it may have been designed that only defendant would sell the marijuana, the prior combination and agreement to receive proceeds by those involved was reasonably established and certainly points to the existence of the charged conspiracy."

### DISCUSSION

I believe the Court of Appeals concisely and correctly resolved the question at issue. However, this Court holds that we may not fairly infer

"the ultimate fact of conspiracy to sell from the fact of joint acquisition. The ultimate fact of intent to sell might be inferred, but not agreement to sell. What they actually intended to do insofar as payment was concerned, or insofar as where the marijuana was to be sold, whether in Michigan or elsewhere, is on this

record a matter of conjecture. Testimony, indicating expectation of payment does not establish the facts of agreement to be paid from the proceeds of a sale in Michigan."

It would be beneficial if conspirators would reduce their agreements to writing, properly witnessed. Until such becomes standard procedure, we must rely on the legitimate conclusions which the fact finders draw from proper evidence.

In *People v Pitcher,* 15 Mich 397 (1867), Justice CHRISTIANCY wrote in reference to admitting statements of joint criminal enterprisers:

"The common design or concert in a common enterprise is the only basis for the admission of such statements. But like most other facts this is not required to be established by positive proof. It may be and generally is supported only by circumstantial evidence. And it is sufficient that there be evidence tending to establish the fact, and from which the jury may fairly infer it. The weight of the evidence upon this, as upon the other facts in the case, is for the jury."

Also see *People v Saunders,* 25 Mich 119 (1872) where Justice COOLEY said "it often happens that the existence of the conspiracy is only made out by inference from the acts and declarations of the several parties thereto".

*Pitcher* was followed in *People v Beller,* 294 Mich 464; 293 NW 720 (1940). The Court did note that "the circumstances must be within safe bounds of relevancy and be such as to warrant a fair inference of the ultimate facts." Also see *People v Garska,* 303 Mich 313; 6 NW2d 527 (1942), *People v Kanar,* 314 Mich 242; 22 NW2d 359 (1946) and *People v Brynski,* 347 Mich 599; 81 NW2d 374 (1957). There is no objection raised to the relevancy of the testimony in the instant case.

This Court has defined conspiracy as being "a partnership in criminal purposes." *People v Cooper*, 326 Mich 514; 40 NW2d 708 (1950). That opinion further stated:

"A person may be a party to a continuing conspiracy by knowingly co-operating to further the object thereof. *People v. Heidt,* [312 Mich 629; 20 NW2d 751 (1945)]. It is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications. *People v. DeLano,* 318 Mich 557 [28 NW2d 909 (1947)]. Nor is it necessary that one conspirator should know all of the conspirators or participate in all of the objects of the conspiracy. *People v. Garska,* 303 Mich 313."

Also see *People v Knoll,* 258 Mich 89; 242 NW 222 (1932) and *People v Huey,* 345 Mich 120; 75 NW2d 893 (1956).

The trial court instructed the jury without objections. The judge said, in part:

"Proof of the formal agreement is unnecessary to support a finding of guilt, and it is sufficient if the circumstances, acts, and conduct of the parties are such as to show agreement in fact. Such an agreement may be established by evidence that shows the parties steadily pursued the same object, whether acting separately or together, by common or different means, but ever leading to the same unlawful result."

This accords with existing Michigan precedent. See decisions and discussions in *People v Newsome,* 3 Mich App 541; 143 NW2d 165 (1966), *People v Thomas,* 7 Mich App 519; 152 NW2d 166 (1967) and *People v Iaconis,* 29 Mich App 443; 185 NW2d 609 (1971).

One need not be a card carrying member of the counter culture to know that 127 pounds of marijuana, even when reduced to a useable form, was too great a quantity for defendant's personal con-

sumption. From this circumstance, from defendant's lack of funds prior to the trip, from the unpaid status of the harvesters, from the statement and promise made to Conley, the jury could fairly infer that the object of the transaction was the sale of marijuana.

By its verdict, the jury indicated it was persuaded that an agreement to sell existed. I find such conclusion to be supported by competent evidence. I would affirm defendant's conviction.

J. W. FITZGERALD, J., concurred with M. S. COLEMAN, J.