# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 10, 2016

Plaintiff-Appellee,

v

No. 328476
Wayne Circuit Court
LC No. 14-008713-FH

SHUNTA TEMAR SMALL,

Defendant-Appellant.

Before: STEPHENS, P.J., and SAAD and METER, JJ.

PER CURIAM.

Defendant appeals as of right from his conviction following a jury trial of insurance fraud, MCL 500.4511(1), and conspiracy to commit insurance fraud, MCL 500.4511(2) and MCL 750.157a. This case arose from suspicions that defendant was falsely maintaining that his personal motor vehicle, a 2007 GMC Envoy, was stolen in order to claim benefits from his insurer. Defendant was sentenced to 6 months of non-supervised probation and ordered to pay $659.96 in restitution, $1,300 in court costs, and $136 in state costs. Probation was set to close upon full payment of all costs and fees. We affirm.

## I. BACKGROUND

John Clark, who worked with defendant on fixing up residential property, testified that defendant approached him in August 2013 and asked him to "get rid of" defendant's Envoy, suggesting that Clark could "scrap" it. Defendant delivered the Envoy to Clark's house and gave Clark the keys. Clark testified that that defendant came to his house and reclaimed the keys three or four days later, telling Clark that he should "hurry up and get rid of" the vehicle.

Detroit Police Department Officer Edmund Kress testified that on August 25, 2013, a woman entered the precinct and reported that a car registered to defendant had been stolen. Kress recalled that as he was assisting the woman in filing a report, defendant entered the precinct. At the time, defendant was a Detroit Police officer. Kress indicated that defendant did not provide any information to him pertaining to the report of a theft. The woman reporting the stolen car was defendant's wife, Alease Small.

Justin Lawlor, then a claims adjuster for Progressive Insurance Company, testified to the claim filed regarding defendant's Envoy on August 26, 2013. Lawlor reported that Progressive's records indicated that defendant's wife was the vehicle's primary driver. Lawlor reported that on

-1-

August 28, 2013, he spoke with defendant over the telephone to gather information about the vehicle's purported theft. Lawlor testified that defendant informed him that on the night the vehicle was stolen, defendant received a phone call from his wife in which she told defendant that she needed to be picked up from a nightclub. Lawlor asked defendant if there were witnesses or suspects to the theft or broken glass or other debris where the vehicle had been parked and was told that, "[t]here weren't any [witnesses] to speak to at that time" or glass on the ground.

Following up on a lead provided by an informant, police discovered a dismantled vehicle outside Clark's home. A bucket of miscellaneous tools, including a grinder, was found in the basement, and car parts were found in a bedroom. Clark testified that he informed the police that he was dismantling a vehicle owned by defendant to sell the component parts as scrap, that defendant gave him permission to do so, and that Clark knew it was an "insurance job."

At the close of the prosecution's case-in-chief, defendant moved the trial court for a directed verdict. Defendant claimed that the prosecution had not presented evidence that he had made any statement to Progressive and therefore he could not be convicted of insurance fraud. Defendant argued that the prosecution also failed to present evidence that he and Clark had entered into an agreement to make a false statement to an insurance agent, and that therefore the conspiracy charge should also be dismissed.

The trial court agreed with defendant that the prosecution had not presented enough evidence for a rational jury to find a conspiracy between defendant and Clark. However, the court found sufficient evidence for a rational jury to find that defendant conspired with his wife to commit insurance fraud:

> . . . [I]f the evidence produced by the prosecution is to be believed, the defendant's wife is the one who was the person who drove the car to the club and was truly the person who reported it stolen. She was the one who allegedly had to be picked up at the bar. She made the report to the police. She also made a report to Progressive Insurance.
>
> For this conspiracy to work, both individuals must have been involved and both the individuals must have been part of that agreement; that supported by the fact that . . . there was a false statement not only by [defendant] but also by his wife, if taking the evidence in the light most favorable to the prosecution.
>
> So the essential elements of this crime that the defendant and someone else knowingly agreed to commit insurance fraud . . . and that the defendant specifically intended to help commit that crime and that this agreement took place between the time frame as charged are, taking the evidence in the light most favorable to the prosecution, satisfied.

Accordingly, the trial court denied defendant's motion for directed verdict.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution did not present sufficient evidence to prove that he conspired with his wife to commit insurance fraud and that the trial court therefore erred in denying his motion for a directed verdict of acquittal on that charge. "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo . . . ." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

Upon a defendant's proper motion, the trial court must direct a " 'verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction.' " *People v Szalma*, 487 Mich 708, 720-721; 790 NW2d 662 (2010), quoting MCR 6.419(A). "In assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003). This Court reviews the trial court's decision under this same standard. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Further, " '[a]n appellate court must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide questions of fact.' " *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992)[1], quoting *People v Palmer*, 392 Mich 370, 375-376; 220 NW2d 393 (1974).

" 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), quoting *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). The prosecution "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury 'in the face of whatever contradictory evidence the defendant may provide.' " *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995).

A person is guilty of conspiracy to commit insurance fraud where that person "enters into an agreement or conspiracy to commit a fraudulent insurance act under [MCL 500.4503]." MCL 500.4511(2). MCL 500.4503 states in relevant part as follows:

> A fraudulent insurance act includes, but is not limited to, acts or omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive:
>
> * * *
>
> (c) Presents or causes to be presented to or by any insurer, any oral or written statement including computer-generated information as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false information concerning any fact or thing material to the claim.

---

[1] Amended on other grounds 441 Mich 1201 (1992).

(d) Assists, abets, solicits, or conspires with another to prepare or make any oral or written statement including computer-generated documents that is intended to be presented to or by any insurer in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false information concerning any fact or thing material to the claim.

"Statement," as defined by MCL 500.4501(i), "includes, but is not limited to, any notice statement, proof of loss, bill of lading, receipt for payment, invoice, account, estimate of property damages, bill for services, claim form, diagnosis, prescription, hospital or doctor record, X-rays, test result, or other evidence of loss, injury, or expense."

The Insurance Code, MCL 500.100 *et seq.*, does not define "conspiracy." See MCL 500.115 (providing general definitions for the act), MCL 500.116 (same), and MCL 500.4501 (providing definitions for Chapter 45, Insurance Fraud). There is, also, no definition in the Michigan Penal Code, MCL 750.1 *et seq*. Where the Legislature has not provided a definition for a word or phrase under consideration by an appellate court, the word or phrase "shall be . . . understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a. Consistent with this principle, "[i]t is an elementary principle of construction that [this Court] will assign to common-law terms their common-law meaning unless the Legislature directs otherwise." *People v Young*, 418 Mich 1, 13; 340 NW2d 805 (1983). "Conspiracy is defined by common law as 'a partnership in criminal purposes.' " *People v Justice*, 454 Mich 334, 345; 562 NW2d 652 (1997), quoting *People v Atley*, 392 Mich 298, 310; 220 NW2d 465 (1974). "Under such a partnership, two or more individuals must have voluntarily agreed to effectuate the commission of a criminal offense." *Id*. "Accordingly, there must be proof demonstrating that the PARTIES SPECIFICALLY intended to further, promote, advance, or pursue an unlawful objective." *Id*. at 347.

Therefore, the prosecution must prove that the defendant and another person agreed to cause a statement they each knew to be false to be presented to an insurer in connection with a claim for payment or other benefit pursuant to an insurance policy, and that the defendant and the other person each specifically intended both the communication and the payment to be made.

Defendant concedes that sufficient evidence exists for a rational jury to conclude that he intended to cause a false statement to be presented to his insurer. At issue, then, is whether the prosecution presented sufficient evidence to persuade a rational trier of fact beyond a reasonable doubt that defendant and his wife made an agreement and shared an intent. The prosecution presented no direct evidence on these issues. However, direct proof of a conspiracy is not required, and "proof may be derived from the circumstances, acts, and conduct of the parties." *Id*.

The prosecution presented evidence that both defendant and his wife were named on the Envoy's insurance policy, which specified the wife as the vehicle's primary driver. Clark testified that defendant had dropped the Envoy off at Clark's home a few days before the purported theft, under an agreement by which Clark was to dismantle the vehicle to sell the

component parts as scrap. Officer Kress and adjuster Lawlor testified that reports made to the police and Progressive respectively indicated that the vehicle was in the care of defendant's wife when it was reportedly stolen.

Kress testified that defendant's wife reported on August 25, 2013 that the vehicle was stolen. She repeated this claim after defendant had joined her at the police station. Further, Kress explained, although defendant's wife was the person he was primarily dealing with when she reported the vehicle stolen, defendant would explain things to her if she had a question. Similarly, Lawlor stated that defendant and his wife met with him jointly to discuss the insurance claim. Finally, multiple witnesses testified that defendant's vehicle was ultimately found dismantled at Clark's home.

Although defendant insists that the prosecution failed to refute "the reasonable possibility that [defendant] was attempting to deceive [his wife] just as he was attempting to deceive Progressive Insurance," the defense offered no such theory at trial. And again, the prosecution is not required to rebut "every reasonable theory consistent with innocence," but rather need only convince the jury "in the face of whatever contradictory evidence the defendant may provide." *Parker*, 288 Mich App at 509 (internal quotation marks and citation omitted).

Viewed in the light most favorable to the prosecution, the evidence showed that defendant's wife was not in possession of the vehicle on the night she reported to the police it had been stolen and this was sufficient to allow a rational jury to determine that she was party to a plan to pass off the vehicle as stolen. Further, the evidence that defendant's wife was a beneficiary under the policy with Progressive and joined defendant in discussing the insurance claim with Progressive's adjustor was sufficient to allow a rational jury to determine that defendant's wife was party to a plan to claim insurance benefits in the matter. Accordingly, the trial court did not err in denying defendant's motion for a directed verdict on the conspiracy charge.[2]

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Henry William Saad
/s/ Patrick M. Meter

---

[2] Defendant devotes a substantial portion of his brief on appeal arguing that sufficient evidence was not presented for a rational jury to determine that defendant conspired with Clark to commit insurance fraud. However, the court effectively granted defendant's motion for directed verdict with regard to a conspiracy between defendant and Clark, stating, "There is nothing this court has heard on the record that would support that that false statement was facilitated, promoted, encouraged by Mr. Clark."